COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  | § |  |
|---|---|---|
| EDITH ROMAN, | | No. 08-18-00041-CV |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | County Court at Law No. 5 |
| | § | |
| JOSE LUIS RIOS RAMIREZ, SR., | | of El Paso County, Texas |
| VELIA RIOS RAMIREZ AND | § | |
| JOSE LUIS RAMIREZ, JR., | | (TC # 2017DCV1893) |
| | § | |
| Appellees. | | |
| | § | |

## **O P I N I O N**

Edith Roman appeals a default judgment taken against her in a suit to declare a lien invalid and unenforceable. Her first issue on appeal--a challenge to the proof of service to support the default judgment--was decided adversely to her in a previous mandamus action. We conclude that prior decision is now law-of-the-case. As to her other issues, we reject several of her challenges to the sufficiency of the evidence, as well as her claim that the trial court erred in denying a motion for new trial. We sustain her challenge to the appellate attorney's fees awarded in the default judgment and modify the judgment to conform that award to the evidence presented below. As modified, we affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

### The Lawsuit Below

On June 7, 2017, Jose Luis Ramirez, Sr, Velia Rios Ramirez, and Jose Luis Rios Ramirez, Jr. (collectively, the Rios family) filed suit against Edith Roman complaining of liens that she recorded against two properties.[1]  One property was Jose Luis Ramirez Sr. and Velia Ramirez's homestead.  The other property was owned by Jose Luis Rios Ramirez, Jr., and had been leased to Edith Roman and her husband, Alejandro Hernandez.  Roman was evicted from the property on March 20, 2012 for non-payment of rent.  Seven days later, she filed liens against both the property she had leased, and Jose Luis Ramirez Sr. an Velia Ramirez's homestead.

The Rios family's lawsuit alleged various deficiencies in the lien filings, and they sought a declaration that the liens are invalid and unenforceable.  The lawsuit additionally asserted claims for slander of title and violation of Chapter 12 of the Civil Practices and Remedies Code.  In addition to the damages sought for those claims, the lawsuit asked for attorney's fees and exemplary damages.

### Service of Process

The Rios family hired a private investigator, Gregory Williams of CWI Investigations, to locate and serve Roman.  The investigator learned that Roman was living at an Anthony, New Mexico address.  The Rios family filed a motion for substituted service which sought permission to leave the citation and suit papers with anyone over the age of sixteen at the New Mexico address.  The motion was supported by an affidavit of the investigator describing his efforts to locate Roman.  That motion for substituted service, however, was never acted on.  Instead, the trial court

---

[1]  The factual summary is based on the Rios family's original petition, and the affidavits and unsworn declarations filed below.

signed an order that authorized Gregory Williams or Victor Hernandez of CWI Investigations to serve the process on Roman at the New Mexico address or wherever she could be found.

Roman called CWI Investigations on July 17, 2017 and offered to accept service at a Walgreens located in El Paso, Texas that same day. According to Williams, the petition, citation, and the order authorizing service were all placed inside a manila envelope. Williams and his partner met Roman and her husband, Alejandro Hernandez, at the Walgreens, and after confirming her identity, he handed her the envelope. Williams documented the encounter with a photograph of Roman's passport which she provided to confirm her identity. He also photographed the vehicle that she arrived in and took a photograph of Roman holding the manila envelope.

The Rios family filed the return of service (endorsed on the backside of the citation) on July 18, 2017. The citation and return are at issue in this case, so we describe them further. The citation is directed to Edith Roman, with a typewritten El Paso address. That address is struck through and two addresses are handwritten on the citation: the New Mexico address where she lived, and the Walgreen's Pharmacy where she agreed to meet Gregory Williams to be served.

The backside of the citation contains the return. One section titled "Certificate of Delivery" reads: I do hereby certify that I delivered to _____ on the 17 day of July, 2017 at 7:45 o'clock p.m. this copy of this instrument." The section is signed by Gregory Williams, notarized, and contains the handwritten address of the Walgreens where he met Roman. Roman's name, however, is handwritten into a blank intended to identify the sheriff, if a sheriff served the process. In effect, Williams appears to have inserted Edith Roman's name into the wrong blank. The blanks are stacked on top of each other, separated by several other pre-printed blank lines.

Based on the service date, Roman's answer was due to be filed by August 7, 2017.

3

**Default Judgment**

On August 8, 2017, the Rios family filed a motion for default judgment. The trial court signed a default judgment the next day. The judgment declared the liens on the two properties of no force and effect. It also awarded the following sums against Roman: $10,000 as statutory damages for filing the liens; $4,536.93 attorney's fees through trial; $10,000 for any appeal to the court of appeals; and $5,000 at Texas Supreme Court.

**Post-Judgment Motions**

Roman timely filed a motion for new trial. The motion asserted that Roman was not properly served in strict compliance with Rules of Civil Procedure 103, 106(a) and (b), and 107, thus denying jurisdiction to render the default judgment. In part, Roman complained about Gregory Williams's affidavit used to support the motion for substituted service and the grounds asserted in that motion (which the trial court had never acted upon). The motion further contends that Williams was not authorized to serve process under Rule 103.

The motion for new trial asserted two other arguments important here. First, she claimed that the citation was not actually served on Roman. She supported that claim through her and Alejandro Hernandez's declarations that contend there was no citation in the manila envelope.[2] Second, she complained of defects in the citation. Roman pointed out that her name had been written into a blank intended to identify a sheriff who might have served the petition, and not the blank identifying the person served. Along the same lines, the motion further claimed the citation was missing several other requirements set out in Rule 107.

---

[2] Both filed unsworn declarations as permitted by TEX.CIV.PRAC.&REM.CODE ANN. § 132.001. Alejandro Hernandez claimed: "I was with Ms. Roman when she received a manila folder from a person claiming to be Gregory Williams. I opened the folder and reviewed its contents. I can attest with all certainty that the folder did not contain a Citation or Order Authorizing Service Other Than By Certified Process Server." Roman made a similar claim: "Alejandro Hernandez accompanied me when I received a manila folder from a person claiming to be Gregory Williams. Mr. Hernandez opened the folder and reviewed its contents. Both Mr. Hernandez and I can attest with all certainty that the folder did not contain a Citation or Order Authorizing Service Other Than By Certified Process Server."

4

The Rios family filed a response that aside from addressing each legal argument, included affidavits from their attorney and the attorney's secretary attesting that the manila envelope given to Williams contained both the petition and citation, as well as the order authorizing service. Williams affidavit then described how he personally handed the envelope to Roman, including the photographs he took documenting the service of process. Williams' partner similarly swore that the envelope was handed to Roman at the Walgreen's parking lot.

On August 18, 2017, the trial court signed an order requiring the El Paso County Clerk to remove specified lien filings by Roman unless she posted a bond suspending enforcement of the order. Roman filed a motion to stay that order, based on her motion for new trial. The Rios family also obtained a writ of execution on the judgment. Roman responded with a motion to dissolve that writ. Roman then filed an amended motion for new trial that added two substantive arguments. First, she contended the judgment was not final because it did not dispose of the slander and exemplary damages claim that were alleged in the original petition. Second, she claimed that her failure to answer was not intentional or the result of conscious indifference.

The trial court denied both the motion for new trial and motion to stay.

**Mandamus and First Appeal**

Roman then filed two proceedings in this Court. First, she filed a notice of appeal which we docketed as case No. 08-17-00235-CV. Roman also filed a Petition for Mandamus that asserted two issues. *In re Roman*, 554 S.W.3d 73, 75-76 (Tex.App.--El Paso 2018)(original proceeding).[3] In her first issue, Roman argued that the default judgment was void because the court lacked personal jurisdiction over her. The five subparts of that argument from the table of authorities in the Petition for Mandamus are as follows:

---

[3] Alejandro Hernandez was also a relator in that proceeding.

Affidavit in Support of Motion for Substituted Service is Invalid

Ms. Roman Was Not Served With a Copy of The Citation

Ms. Roman Was Not Served With a Copy of The Order Authorizing Service Other than By Certified Process Server

The Return of Service is Defective

No Adequate Remedy by Appeal

The body of the brief included argument that tracked each of these section headers. We overruled that issue, however, finding that "[t]he mandamus record conclusively establishes that Roman was personally served by Gregory Williams on July 17, 2017 with a copy of the petition, the citation, and the order for service on July 17, 2017." *In re Roman*, 554 S.W.3d at 79.

In her second mandamus issue, Roman successfully convinced us that the default judgment was not final. The default had not disposed of the slander of title and exemplary damage claims. We therefore granted her partial relief, ordering that the trial court set aside a writ of execution that the Rios family has filed. *In re Roman*, 554 S.W.3d at 79.

Roman filed a motion for rehearing of our decision that expanded upon her jurisdictional argument. Her first point for reconsideration stated:

The mandamus record DOES NOT conclusively establish that Roman was personally served by Gregory Williams on July 17, 2017 with a copy of the petition, the citation, and the order for service on July 17, 2017.

Her argument focused on claimed defects in the return: "The return does not name Ms. Roman or any person, upon whom delivery of the citation was made, the section where the name of the person served should go, is blank." She argued that instead, her name "appears where the Sheriff's name should be." She principally relied on two cases: *Shamrock Oil Co. v. Gulf Coast Natural Gas, Inc.*, 68 S.W.3d 737, 739 (Tex.App.--Houston [14th Dist.] 2001, pet. denied) and *Woodall v. Lansford*, 254 S.W.2d 540 (Tex.Civ.App.--Fort Worth 1953, no writ). We denied the motion for rehearing.

6

As to her regular appeal, we dismissed it for want of jurisdiction because we agreed that the default judgment was not final. *Roman v. Ramirez*, 08-17-00235-CV, 2018 WL 739599, at *1 (Tex.App.--El Paso Feb. 7, 2018, no pet.). On remand, the trial court non-suited the slander of title and exemplary damage claims, making the earlier default judgment final and appealable. Roman filed a new notice of appeal, and now raises five issues: (1) the trial court lacked personal jurisdiction to enter the default "because the return of service does not show proper service;" (2) the evidence was insufficient to show liability under Chapter 12 of the Civil Practices and Remedies Code, (3) the evidence was insufficient to support damages; (4) the evidence was insufficient to support the award of attorney's fees, and (5) the trial court abused its discretion in denying the amended motion for new trial.

**JURISDICTIONAL DEFECTS WERE DECIDED IN THE MANDAMUS**

Roman's first issue mirrors a subset of the very same complaints she made in the mandamus already decided by this Court. Her first issue focuses on a claimed defect in the return of service--her name was handwritten into the wrong blank on the return. She made the same argument in the mandamus, and particularly the motion for rehearing. As there, she now claims that *Shamrock Oil Co. v. Gulf Coast Natural Gas, Inc.* and *Woodall v. Lansford* support her claim. The Rios family responds that we have already decided the issue against her, which is now law-of-the-case. We begin there.

Under the law-of-the-case doctrine, a court of appeals is ordinarily bound by its initial decision if there is a subsequent appeal in the same case. *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 182 (Tex. 2012); *Briscoe v. Goodmark Corp.,* 102 S.W.3d 714, 716 (Tex. 2003). "By narrowing the issues in successive stages of the litigation, the law of the case doctrine is intended to achieve uniformity of decision as well as judicial economy and efficiency. The

7

doctrine is based on public policy and is aimed at putting an end to litigation." *Briscoe*, 102 S.W.3d at 716. It discourages parties from relitigating an issue in the hope of finding a more favorably disposed tribunal. *See LeBlanc v. State,* 826 S.W.2d 640, 644 (Tex.App.--Houston [14th Dist.] 1992, pet. ref'd)("Without application of this doctrine, appellant would be able to gamble that between two court of appeals' decisions he would have a better chance of obtaining a favorable ruling by one of them.").

One twist here is that we first decided the jurisdictional challenge in a mandamus. Nonetheless, several other courts of appeals have concluded that a legal issue actually resolved in a mandamus action becomes law-of-the-case in subsequent proceedings in the same case. *See In re United Services Automobile Assn.*, 521 S.W.3d 920, 928 (Tex.App.--Houston [1st Dist.] 2017)(orig. proceeding)(applying law-of-the-case to reverse a new trial order on the same grounds as decided in an earlier mandamus in the same case); *In re Guardianship of Cantu de Villarreal*, 330 S.W.3d 11, 20-21 (Tex.App.--Corpus Christi 2010, no pet.)(holding law-of-the-case doctrine prevented reconsideration of issue decided in earlier mandamus petition); *B S P Mktg., Inc. v. Standard Waste Sys., Ltd.*, No. 05-03-00518-CV, 2004 WL 119235, at *1-2 (Tex.App.--Dallas Jan. 27, 2004, no pet.)(mem. op.)(because court reached the merits of an abuse of discretion question in an earlier mandamus, that disposition controlled the same issue arising in subsequent appeal).

Roman does not challenge these cases. Rather she contends that our earlier decision was clearly erroneous. And true enough, a court may decline to apply the law-of-the-case doctrine if its original decision is clearly erroneous. *Briscoe*, 102 S.W.3d at 716-17. "Application of the doctrine lies within the discretion of the court, depending on the particular circumstances surrounding that case." *Id*. "Clearly erroneous" for law-of-the-case purposes, means something

8

more than a mere disagreement with the prior decision. *See Warren E & P, Inc. v. Gotham Ins. Co.*, 368 S.W.3d 633, 640-41 (Tex.App.--El Paso 2012)(Antcliff, J., dissenting), *rev'd on other grounds,* 455 S.W.3d 558 (Tex. 2014). That standard is not met here.

Roman's substantive argument turns on several claimed defects in the citation and return of service. Because the record does not show "strict compliance" with the rules of service, she claims the default must be set aside. *E.g. Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990). And we acknowledge the body of law that in a *restricted appeal*, the court does not indulge any presumptions in favor of proper issuance, service, and return of citation. *See e.g. Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994)(per curiam); *Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex. 1985)(per curiam); *Whiskeman v. Lama*, 847 S.W.2d 327, 329 (Tex.App.--El Paso 1993, no writ). But this case arises from a regular appeal of a denied motion for new trial. The Texas Supreme Court has drawn a distinction in such an appeal:

> A restricted appeal is filed directly in an appellate court. As in any other appeal, the appellate court does not take testimony or receive evidence. Instead, the review is limited to errors apparent on the face of the record. In such appeals, '[t]here are no presumptions in favor of valid issuance, service, and return of citation.' *Primate Const., Inc. v. Silver,* 884 S.W.2d 151, 152 (Tex. 1994)(citations omitted). Circumstances require this last rule, because presumptions can neither be confirmed nor rebutted by evidence in an appellate court. . . . By contrast, when a default judgment is attacked by motion for new trial or bill of review in the trial court, the record is not so limited. In those proceedings, the parties may introduce affidavits, depositions, testimony, and exhibits to explain what happened. That being the case, these procedures focus on what has always been and always should be the critical question in any default judgment: 'Why did the defendant not appear?'

*Fidelity and Guar. Ins. Co. v. Drewery Const. Co., Inc.*, 186 S.W.3d 571, 573-74 (Tex. 2006)(most citations omitted). The Texas Supreme Court made the same distinction in *Sutherland v. Spencer*, 376 S.W.3d 752, 754 (Tex. 2012) by writing "Southern Customs states that '[t]here are no presumptions in favor of valid issuance, service, and return of citation,' . . . That is true when

9

attacking a default judgment by restricted appeal, but our analysis is different when, as here, a default judgment is attacked by a motion for new trial.").[4]

Following a motion for new trial, the record can provide one of two answers as to why the defendant did not appear. The first, as *Drewery* explains, is "Because I didn't get the suit papers[.]" 186 S.W.3d 571, 573-74. Included in that category are situations like *Wilson v. Dunn* where the plaintiff attempts to serve a defendant through some unauthorized procedure. *Id*. at 574 n.1 ("Receiving suit papers or actual notice through a procedure not authorized for service is treated the same as never receiving them. *See Wilson v. Dunn,* 800 S.W.2d 833, 836 (Tex. 1990)."). When the claim of nonreceipt is proved, the court should set aside the default. *Id*. at 573-74.

The second possible answer as *Drewery* explains is "I got the suit papers but then . . . [.]" *Id*. In that circumstance, "the default judgment should be set aside only if the defendant proves the three familiar *Craddock* elements." *Id*., *citing Craddock v. Sunshine Bus Lines*, 133 S.W.2d 124, 126 (1939). Under *Craddock*, a movant must demonstrate that: (1) their failure to appear for trial was not intentional or the result of conscious indifference; (2) they have a meritorious defense; and (3) the granting of a new trial will not operate to cause delay or injury. *Milestone Operating, Inc. v. ExxonMobil Corporation,* 388 S.W.3d 307, 309 (Tex. 2012); *Craddock*, 133 S.W.3d at 126.

While Roman attempted to place herself into the "I didn't get the suit papers" class of cases, that was a contested issue. Roman's motion for new trial included two declarations conceding that a person who identified himself as Gregory Williams handed her a manila envelope. She claimed the citation and the order authorizing service were not in the envelope. The Rios family, however,

---

[4] The two cases that Roman principally relies on are inopposite. The court in *Shamrock Oil Co. v. Gulf Coast Nat. Gas, Inc.*, 68 S.W.3d 737, 738-39 (Tex.App.--Houston [14th Dist.] 2001, pet. denied) apparently did decide the case based on a technical flaw in the return of service following a motion for new trial. But the decision predates *Drewery* and *Sutherland.* The court in *Woodall v. Lansford*, 254 S.W.2d 540, 540 (Tex.Civ.App.--Fort Worth 1953, no writ) decided the case on a writ of error which is the predecessor to our current restricted appeal.

did not concede that issue. Rather, they responded with one affidavit from the paralegal who assembled and placed the documents into the envelope. They also responded with an affidavit from the attorney who personally oversaw that process, and an affidavit from the process server who accepted the manila envelope and personally served it on Roman. Each testified that the envelope contained the petition, citation, and order authorizing service. The process server buttressed his claim with a photograph showing Roman with the manila envelope in her hand.

On that record, the technical errors that Roman complains of lose their luster. The decision point turns on a battle of credibility that the trial court resolved against Roman. She makes no credible claim that the order authorizing Williams to serve process violated any rule of procedure.[5] And once the record shows that Roman was actually served with the citation and petition by a person authorized by court order to serve process, she had a duty to file a timely answer. On that record, and turning to the critical question of why Roman did not answer, the trial court and now this Court are left without any good answer. Accordingly, our prior resolution of the jurisdictional challenge was not clearly erroneous. We thus overrule Roman's first issue that challenges the trial court's jurisdiction to enter the default judgment.

## LIABILITY ALLEGATIONS WERE PROVED BY DEFAULT

Roman's second issue complains that the evidence is insufficient to support the liability allegations against her. For a no-answer default judgment, however, the non-answering party is deemed to have admitted all the facts properly pleaded in the petition. *See Paradigm Oil*, 372 S.W.3d at 183; *Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex. 1979); *Rouhana v. Ramirez*, 556 S.W.3d 472, 477 (Tex.App.--El Paso 2018, no pet.). The defendant's default thus establishes

---

[5] The most that she says in her rely brief is that the order authorizing service was not served along with the petition. She relies on her unsworn declarations, and the fact the citation does not reference the order. She cites no authority requiring that the order be part of the service package, and of course, whether the order was served was also a contested issue, upon which the Rios family presented contravening affidavits.

11

liability and leaves open only the question of unliquidated damages. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992); TEX.R.CIV.P. 243. Roman's second issue is overruled.

## LACK OF PROOF OF ACTUAL DAMAGES IS IRRELEVANT

In her third issue, Roman complains that the Rios family failed to present any evidence of their actual damages. The petition asserted a claim under TEX.CIV.PRAC.&REM.CODE ANN. § 12.002 which provides that "[a] person may not make, present, or use a document or other record with: (1) knowledge that the document or other record is a . . . fraudulent lien or claim against real or personal property or an interest in real or personal property[.]" *Id*. at § 12.002(a)(1). A person who violates this provision is liable to each injured person for "the greater of" $10,000 or "the actual damages caused by the violation[.]" *Id* at § 12.002(b)(1)(A)(B). The judgment here awarded $10,000 collectively to all three plaintiffs. There is no record of the default hearing, and no proof of actual damages in the motion for default. Roman claims this lack of proof of actual damages is fatal to the default. We disagree.

First, Chapter 12 exemplifies several Texas statutory schemes that allow statutory damages without evidence of actual damages. *See Vanderbilt Mortg. and Fin., Inc. v. Flores*, 692 F.3d 358, 372 n. 12 (5th Cir. 2012)(collecting statutes). Moreover, Section 12.002 penalizes the "intent to cause" injury and not actual injury itself. TEX.CIV.PRAC.&REM.CODE ANN. § 12.002(a)(3); *Flores*, 692 F.3d at 372. The default proved the intent to injure which then made the $10,000 statutory penalty automatic unless a higher sum was proved up.

Additionally, Roman can show no harm. Had the Rios family presented evidence of actual damages that amounted to less than $10,000, then under terms of the statute, the trial court would have been compelled to award $10,000. Had the Rios family presented evidence of actual damages of more than $10,000, the trial court would have awarded that sum obviously to the detriment of

Roman. In other words, she is not prejudiced by the lack of proof of actual damages. We only reverse cases where an appellant can show reversible error. TEX.R.APP.P. 44.1. Issue Three is overruled.

## APPELLATE ATTORNEY'S FEES MUST BE MODIFIED

The judgment awards the Rios family $10,000 in appellate attorney's fees for an appeal to this Court, and $5,000 should a petition for review be filed. The affidavit that supports those awards, however, only claims that $1,500 is a reasonable fee for each appellate stage. Roman complains the evidence does not support the award. The Rios family agrees and consents to modifying the judgment to the amounts proven in the affidavit. We accordingly modify the judgment to award $1,500 for the appeal to this Court, and an additional $1,500 for successful defense of any petition for review to the Texas Supreme Court. TEX.R.APP.P. 43.2(b); *Oakwood Mobile Homes, Inc. v. Cabler*, 73 S.W.3d 363, 376 (Tex.App.--El Paso 2002, pet. denied)(reforming judgment on consent of plaintiff to delete award).

## NO ABUSE OF DISCRETION IN DENYING MOTION FOR NEW TRIAL

In her last issue, Roman complains that the trial court abused its discretion in denying her amended motion for new trial.

We review a trial court's refusal to grant a motion for new trial for an abuse of discretion. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009)(per curiam). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles or whether the trial court's actions were arbitrary or unreasonable under the circumstances of the case. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). Relevant here, a trial court must set aside a default judgment when the movant satisfies the requirements articulated in *Craddock v. Sunshine Bus Lines*, 133 S.W.2d 124 (1939). *See*

13

*Director, State Employees Workers' Compensation Division v. Evans,* 889 S.W.2d 266, 268 (Tex.1994); *Rivas v. Rivas,* 320 S.W.3d 391, 393 (Tex.App.--El Paso 2010, no pet.). As we note earlier, *Craddock* requires a showing that: (1) the failure to appear for trial was not intentional or the result of conscious indifference; (2) the defendant has a meritorious defense; and (3) the granting of a new trial will not operate to cause delay or injury. *Craddock,* 133 S.W.3d at 126.

Because it is dispositive, we address only whether Roman met the first prong of the *Craddock* test, which required her to establish that the failure to appear for trial was not intentional or the result of conscious indifference. "A defendant satisfies its burden as to the first *Craddock* element when its factual assertions, if true, negate intentional or consciously indifferent conduct by the defendant and the factual assertions are not controverted by the plaintiff." *Sutherland,* 376 S.W.3d at 755. Conscious indifference has been defined as failing to take some action which would seem obvious to a person of reasonable sensibilities under the same circumstances. *Evans,* 889 S.W.2d at 269; *Rivas,* 320 S.W.3d at 393-94. The burden of proof is on the movant to show that the failure appear for trial was not the result of conscious indifference. *Munoz v. Rivera,* 225 S.W.3d 23, 28 (Tex.App.--El Paso 2005, no pet.); *Rivas,* 320 S.W.3d at 393. We look to the knowledge and acts of the movant to determine whether they satisfy the burden as to the first *Craddock* element. *Milestone Operating,* 388 S.W.3d. at 309; *Evans,* 889 S.W.2d at 269; *Rivas,* 320 S.W.3d at 393-94.

The record here is limited to the declarations and affidavits submitted in the motion for new trial and the Rios family's response. Roman meets her burden if the factual assertions in her proofs are not controverted, and those proofs sets forth facts that, if true, negate intentional or consciously indifferent conduct. *See Evans,* 889 S.W.2d at 269; *Strackbein v. Prewitt,* 671 S.W.2d 37, 38-39 (Tex. 1984); *Rivas,* 320 S.W.3d at 394. But when the proofs are contested, "it is the

14

duty of the court, as the fact finder at a hearing on motion for new trial, to ascertain the true facts surrounding the default circumstances." *Harmon Truck Lines, Inc. v. Steele*, 836 S.W.2d 262, 265 (Tex.App.--Texarkana 1992, writ dism'd). The court, as the fact-finder, is "the sole judge of the credibility of the witnesses and the weight to be given to their testimony." *Stein v. Meachum*, 748 S.W.2d 516, 518 (Tex.App.--Dallas 1988, no writ).

Roman specifically claims because the citation was not served with the petition, and accordingly, she did not know that an answer was required. The claim that she did not receive the citation, however, was a controverted fact. The Rios family submitted sworn affidavits from the paralegal and attorney who placed the citation into an envelope, as well as the process server who was present when that task was accomplished. The process server further swore that he delivered the envelope to Roman. We defer to the trial court's implied finding that Roman did in fact receive the citation, which on its face informed her of the duty to file an answer, and the means to calculate the date upon which the answer must be filed. Accordingly, the record raises an inference of conscious indifference to the answer date, and the trial court did not abuse its discretion in denying the motion for new trial. *See Eyre v. Eastar Investments, Inc.*, No. 12-18-00001-CV, 2018 WL 4766554, at *5 (Tex.App.--Tyler Oct. 3, 2018, no pet. h.)(in post answer default, claim that party did not know of trial setting was a controverted fact and trial court did not abuse discretion in denying motion). Roman's fifth issue is overruled.

## CONCLUSION

Roman's first, second, third, and fifth issues are overruled. Her fourth issue is sustained to the extent that we modify the judgment to award Jose Luis Ramirez, Sr, Velia Rios Ramirez, and Jose Luis Rios Ramirez, Jr. One Thousand Five Hundred dollars ($1,500.00) for successfully defending the appeal to this Court, and an additional One Thousand Five Hundred dollars

15

($1,500.00) if a petition for review is filed and successfully defended before the Texas Supreme Court.  Otherwise, the judgment below is otherwise affirmed.

February 8, 2019

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.