COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| IN THE INTEREST OF E. O., A CHILD. | § | No. 08-19-00261-CV |
| | § | Appeal from the |
| | § | 65th District Court |
| | § | of El Paso County, Texas |
| | § | (TC#2018DCM1157) |
| | § | |

## **O P I N I O N**

Appellants G.O. (Alleged Father) and H.A (Mother) have filed appeals from a final order terminating their parental rights to E.O. We affirm the termination order as to Mother and Alleged Father.

## **I.**

## **BACKGROUND**

### *Factual History*

E.O. was born in late December 2017. In January 2018, the Department received an intake alleging that Mother and Alleged Father were neglectfully supervising E.O. There were also allegations of domestic violence between Mother and Alleged Father. Specifically, in February 2018, Mother told police that Alleged Father, in the presence of E.O., had punched her twice with a right closed fist to the top right side of her head and kicked her once in the stomach and once on

her right calf after she fell down; an officer observed "visible irritation on stated area." Alleged Father later pleaded guilty in March 2018 to assault with bodily injury to a family member (Mother) and was sentenced to 25 days in the El Paso County Jail.

According to a Family Service Plan Evaluation that was admitted at trial without objection, Mother tested positive for marijuana and "another drug" at E.O.'s birth. Ten days after E.O.'s birth, when Mother returned for E.O.'s PKU test, records noted she was "wearing a large coat, grinding her teeth and not speaking" and she "did not seem to understand what was being told to her in regards to how to care for [E.O.]" Alleged Father "appeared to have not bathed in days." E.O., who was "shivering" and "jittery," was wrapped in a blanket and wearing no clothes in weather that was in the 50's. Mother and Alleged Father stated that they had financial support and everything they needed to take care of E.O., and that a grandmother would be caring for the child. Hospital staff asked them to speak with a social worker, but they left before doing so.

On February 23, 2018, the Department filed an original petition for child protection and termination of parental rights. E.O. was then nearly two months old. The petition identified G.O. as the "alleged father." The record on appeal shows that Mother filed a statement of indigence and an application for a court-appointed attorney, but Alleged Father did not. On May 14, 2018, the State Registrar for the Texas Department of State Health Services certified that Alleged Father had not filed a notice of intent to claim paternity with the paternity registry.

During the pendency of the suit, Alleged Father was required to complete a Battering Intervention and Prevention Program (BIPP) and obtain mental health services, among other requirements. Alleged Father completed an online course, but a caseworker was unable to verify if Alleged Father met the mental health services requirement because he did not sign a release. Alleged Father was ordered to submit to random drug testing; but he did not comply, informing a

2

caseworker that his hair was not long enough to be able to do a drug test. In March 2019, Alleged Father told the caseworker that he did not want to have any further contact with her, at which point she stopped contact with him. In April and June of 2019, Mother tested positive for and admitted to having used methamphetamine a few weeks earlier. While termination proceedings remained pending, Mother and Alleged Father lived together in five or six different residences, including several motel and hotel rooms.

### *Procedural History*

The trial court held a final hearing on July 26, 2019. At the start and before witness testimony, counsel for Mother moved for a continuance on the basis that his client had advised him that she had found a place to live. Father's counsel also requested a continuance stating that he had *not* had any contact with his client in the last 30 days. The trial court denied both parties' requests for continuances. The Department called caseworker Gloria Aguero as a witness. Aguero testified that Mother partially complied with the service plan ordered and initially completed inpatient treatment, but later she was unsuccessfully discharged from outpatient treatment for nonparticipation. Aguero further testified that she was only able to view one of the five or six temporary residences where Mother had resided, but Aguero did not believe that the residence was appropriate for a one-year old, as the home was not clean, there were stairs that did not have a gate which created a fall hazard, and there was a hole in the door to the water heater. According to Aguero, Mother admitted to using methamphetamine after completing inpatient services but while participating in outpatient services. Aguero opined that termination of Mother's parental rights would be in E.O.'s best interest in order to provide E.O. with a stable home and to meet his basic needs.

Aguero testified that she personally had not had contact with Alleged Father since March 2019, but the Department remained in contact with him. Aguero further explained that Alleged Father was offered transportation to attend drug testing, but he refused to go. According to Aguero, Alleged Father did not regularly and consistently visit with the child, and he did not have significant contact with him outside the visits. Aguero opined that if Alleged Father were adjudicated to be E.O.'s biological father, that in such case, termination of his parental rights would be in E.O.'s best interest.

After the Department completed its direct examination of Aguero, counsel for Alleged Father asked for a brief recess stating, "since my client has appeared." The trial court recessed to allow counsel to confer with Father. When trial resumed, the trial court noted for the record that both Mother and Alleged Father had not returned. Father's counsel reported that the bailiff had asked for his client's purse and belongings and he could see through the window of the door that Mother and Father were waiting at the elevator appearing to be leaving. Neither Mother nor Alleged Father ever returned or offered any testimony at the proceeding.

Javier Castillo, a caseworker assistant who supervised the visits between E.O., Mother, and Alleged Father for approximately a year and a half, also testified at the hearing. He testified that Mother and Alleged Father were not bonded to the child; the child would be "on his own" during the visits and would move away from the parents when they would try to hold him. Elaborating, Castillo described that, at times, the child would become upset during visits and turn to Castillo for comfort, not to Mother or Alleged Father. According to Castillo, Mother did not address E.O.'s needs during visits and had to be reminded to change E.O.'s diaper or to provide him with a snack, and she would not intervene when E.O. would try to stick his fingers into electrical outlets. Castillo did not observe any unusual behaviors from Alleged Father. Alleged Father did not attend any

4

visits with E.O. alone, but always came with Mother, though Mother did attend some visits by herself.

The Department's final witness was CASA volunteer Sue Gremar. She testified that E.O. had been placed with foster parents who expressed a desire to adopt him and he was progressing normally with his verbal and physical development. She also testified that she had attended seven or eight visitation sessions with E.O., Mother and Alleged Father, and that her observations were similar to those of Castillo. Alleged Father did not show up to some visits despite Mother's desire for him to attend. Gremar opined that Mother and Alleged Father's rights should be terminated because they had not shown interest in being with him or shown that they knew how to parent him. She also testified: "There is a general lack of interest I think with the father. He will come during the visits, he tends to restrict [E.O.]'s motions and movements. He has restricted Mom from talking during a visit." Before the close of testimony, neither Mother's nor Alleged Father's counsel called any witnesses on their behalf.

Following the hearing, the trial court signed an order terminating Mother's parental rights on four grounds: (1) knowingly placing or allowing the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child, TEX.FAM.CODE ANN. § 161.001(b)(1)(D); (2) engaging in conduct or knowingly placing the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child, TEX.FAM.CODE ANN. § 161.001(b)(1)(E); (3) failed to comply with the court ordered plan, TEX.FAM.CODE ANN. § 161.001(b)(1)(O); and (4) using a controlled substance in a manner than endangered the health or safety of the child coupled with a failure to complete a court-ordered substance abuse treatment program or continued use after competition of a court-ordered substance abuse treatment program, TEX.FAM.CODE ANN. § 161.001(b)(1)(P).

The trial court summarily terminated Alleged Father's rights, finding that Alleged Father did not respond to the Department's petition by timely filing an admission of paternity or by filing a counterclaim for paternity or for voluntary paternity to be adjudicated under Chapter 160 of the Texas Family Code before the final hearing in this suit, nor did Alleged Father register with the paternity registry.

This joint appeal followed.

## II.

## DISCUSSION

Both Mother and Alleged Father filed notices of appeal in this case. We deal first with Alleged Father's appellate claims. In his sole appellate issue, Alleged Father maintains that the trial court erred by granting summary termination of his parental rights because the Department failed to provide sufficient proof that he had not registered with the paternity registry, and because his participation in some Department service plan activities show that even in the absence of any explicit acknowledgement of paternity over E.O., he impliedly acknowledged paternity through his course of conduct. We disagree that the Department failed to meet its initial evidentiary burden and that Alleged Father's course of conduct on this record rises to the level of an unequivocal admission of paternity.

## A.

### *Alleged Father's Appeal*

#### 1.

#### Jurisdiction

The dissent has raised the issue of whether the Court has jurisdiction to entertain Alleged Father's appeal. Because the issue of subject-matter jurisdiction is fundamental, we deal with this issue first as a threshold matter.

This is not the first time the Court has addressed the issue of jurisdiction in this case. After initially dismissing Alleged Father's appeal on September 25, 2019, in response to what appeared to be an untimely filed notice of appeal,[1] a majority of the dismissal panel[2] voted to grant Father's motion to reconsider the dismissal decision and reinstate Alleged Father's appeal, finding that Alleged Father had timely filed his notice of appeal based on the following: (1) that, pursuant to TEX.R.APP.P. 25.1(a), Mother had filed a timely and earlier-filed notice of appeal; (2) that TEX.R.APP.P. 25.1(b) provides that the filing of a notice of appeal by any party invokes the appellate court's jurisdiction over all parties to the trial court's judgment or order being appealed from; (3) that, pursuant to TEX.R.APP.P. 25.1(c), Alleged Father is required to file his own notice of appeal when seeking favorable relief from the trial court's judgment or order; (4) that TEX.R.APP.P. 26.1(d) allowed Father to file his notice of appeal within 20 days of Mother's notice of appeal; (5) that TEX.R.APP.P. 26.3 permitted the Court to further grant a 15-day extension beyond the initial 20 days; and (6) that Father timely filed his notice of appeal within the extended period. *See In re E.O.*, No. 08-19-00233-CV, 2019 WL 6111391, at *1-*2 (Tex.App.—El Paso Nov. 18, 2019, no pet.)(op. on motion to reconsider by Palafox, J., joined by Barajas, S.J.). The dissent opined that Father's notice of appeal was untimely because, under TEX.R.APP.P. 26.1(b) and TEX.R.APP.P. 28.1(b), the timeline for filing a notice of appeal in an accelerated appeal was

---

[1] *See In re E.O.*, No. 08-19-00233-CV, 2019 WL 4668524, at *1 (Tex.App.—El Paso, Sept. 25, 2019, mem. op. withdrawn).

[2] The Honorable Richard Barajas, senior chief justice, sat as the third panelist when the dismissal opinion was issued in this case. The Court later assigned the Honorable Ann Crawford McClure, senior chief justice, to sit as the third panelist in this case. She currently serves as the third panelist for this opinion.

7

20 days from final judgment with one 15-day extension permitted, and Father's notice of appeal was filed outside that 35-day window. *See id.*, at * 5-*6 (Rodriguez, J., dissenting).

Under the law-of-the-case doctrine, a court of appeals is ordinarily bound by its initial decision on a question of law in subsequent stages of litigation. *See Roman v. Ramirez*, 573 S.W.3d 341, 348 (Tex.App.—El Paso 2019, pet. denied). The previous panel's decision is a decision by this Court. *See* TEX.R.APP.P. 41.1(a)(dealing with panel decisions). And while the application of the law-of-the-case doctrine lies within the discretion of the Court depending on the particular circumstances surrounding that case, there must be "something more than a mere disagreement with the prior decision" to justify a departure from a previous decision in the same case. *Roman*, 573 S.W.3d at 348. The previous panel decided that this Court had jurisdiction. Given the inconsistency that a departure from the original panel decision would create for the parties, particularly at this late stage of litigation, we find that the previous panel's decision binds this panel under law of the case.[3] Jurisdiction has been established. We proceed to review Alleged Father's appeal on its merits.

## 2.

## Merits

### *Standard of Review*

We will affirm a parental termination order if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court relied upon in terminating the

---

[3] The Fifth Circuit has adopted an internal practice stating that a previous panel decision binds future panels' decisions on a point of law absent a change in the law or an en banc decision of the Fifth Circuit, though a secondary source indicates that there seems to be no such similar practice or rule explicitly applicable in Texas courts of appeals. *Compare In re Frazin*, 732 F.3d 313, 319 (5th Cir. 2013) *with* George E. Dix and John M. Schmolesky, 43B TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 55:133, at 247 (3d ed. 2011)(noting at least one incident wherein a panel of a court of appeals "disapproved" another panel's ruling). Still, even absent a mandatory rule like the Fifth Circuit's, similar comity considerations should apply here, especially given that we are not considering a new or different case.

parental rights as well as the finding of best interest. *J.S. v. Texas Department of Family and Protective Services*, 511 S.W.3d 145, 159 (Tex.App.—El Paso 2014, no pet.). When reviewing the legal sufficiency of the evidence in a termination case, we consider all of the evidence in the light most favorable to the trial court's finding, "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005). We give deference to the fact finder's conclusions, indulge every reasonable inference from the evidence in favor of that finding, and presume the fact finder resolved any disputed facts in favor of its findings, so long as a reasonable fact finder could do so. *Id*. We disregard any evidence that a reasonable fact finder could have disbelieved, or found to have been incredible, but we do not disregard undisputed facts. *Id*.

In a factual sufficiency review, the inquiry is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the challenge findings. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *Id*. A court of appeals should consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id.* If the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

*Analysis*

Section 161.002(b)(1) provides for summary termination of an alleged father's rights in the absence of a timely filing of an admission of paternity or a counterclaim for paternity. *In re O.R.M.*, 559 S.W.3d 738, 741 (Tex.App.—El Paso 2018, no pet.). The rights of an alleged father may be terminated if:

9

(1) after being served with citation, he does not respond by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160;

(2) the child is over one year of age at the time the petition for termination of the parent-child relationship or for adoption is filed, he has not registered with the paternity registry under Chapter 160, and after the exercise of due diligence by the petitioner:

   (A) his identity and location are unknown; or

   (B) his identity is known but he cannot be located;

(3) the child is under one year of age at the time the petition for termination of the parent-child relationship or for adoption is filed and he has not registered with the paternity registry under Chapter 160; or

(4) he has registered with the paternity registry under Chapter 160, but the petitioner's attempt to personally serve citation at the address provided to the registry and at any other address for the alleged father known by the petitioner has been unsuccessful, despite the due diligence of the petitioner.

TEX.FAM.CODE ANN. § 161.002(b).

By filing an admission or counterclaim for paternity, the alleged father is given the right to require the petitioner to prove by clear and convincing evidence one of the predicate grounds set forth in Section 161.001(1) and that termination is in the best interest of the child. *In re O.R.M.*, 559 S.W.3d at 741. If the trial court erroneously grants summary termination after the alleged father sufficiently admits paternity, reversal and remand for further proceedings is the proper remedy. *In re C.M.C.*, 273 S.W.3d 862, 883 (Tex.App.—Houston [14th Dist.] 2008, no pet.).

Here, the trial court's order recites that Alleged Father's rights were terminated pursuant to Section 161.002(b)(1) (failing to file an admission of paternity or counterclaim for paternity) and Section 161.002(b)(3) (failing to register with the paternity registry in a case involving a child under one year of age). It is undisputed that Alleged Father did not file in the trial court any pleadings or counterclaims in which he asserts his paternity.

10

Alleged Father mounts two attacks against the summary termination order. First, Alleged Father argues that the Department failed to provide legally sufficient threshold evidence establishing grounds for summary termination because, he asserts, the registry search entered into evidence at trial was only valid as of the date of the search and was not necessarily valid as to the date of trial. He argues that summary termination here was improper because there was no affirmative evidence showing that the registry information was accurate as of the date of trial. We disagree.

As of May 14, 2018, the paternity registry search indicated that Alleged Father had not filed a notice of intent to claim paternity concerning E.O., the child born to Mother on December 25, 2017. This search was conducted after the Department had filed its original petition for termination on February 23, 2018 and its first amended petition on February 26, 2018. E.O. was two months of age at the time the Department's petition was filed. Thus, the record shows there is evidence that the child was under one year of age at the time the petition for termination was filed and Alleged Father had not registered his paternity of E.O. *See* TEX.FAM.CODE ANN. § 161.002(b)(1) and (3). The registry certificate entered into evidence here was sufficient to show lack of registration because it constituted more than a scintilla of evidence on the absence of registration of paternity by Alleged Father. *See R.H. v. Tex. Dep't of Family & Protective Servs.*, 550 S.W.3d 631, 639 (Tex.App.—El Paso 2013, no pet.)(certificates of paternity registry searches which demonstrated alleged father's absence of registration were legally sufficient to terminate rights).

Alleged Father's complaint about the date of the certificate goes to the weight of the evidence, not its legal sufficiency. The argument that Alleged Father's registry status could have changed in the period between when the Department conducted the search and the date of trial,

11

absent any evidence that supports this assertion, amounts to mere surmise or speculation which does not meet the more-than-a-scintilla standard necessary to create a fact issue that would preclude summary termination. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)(evidence offered to prove a vital fact that does nothing more than "create a mere surmise or suspicion of its existence" does not meet the scintilla standard and is no evidence at all). If Alleged Father had, indeed, registered with the paternity registry in the interim period between the date the Department searched the registry and the date of trial, then he could have offered his own evidence negating the Department's evidence as a matter of law, which would preclude summary termination. Instead, the record before us is devoid of any evidence showing he in fact registered after the registry search was conducted. As such, Alleged Father's failure to register with the paternity registry has been established and has not been rebutted.

By his second attack, Alleged Father claims that regardless of his lack of registration, nonetheless, he sufficiently asserted his paternity of the child by informal means so as to preclude a summary termination of his rights. As to this argument, we first note that once the Department established an absence of registration, the burden shifted back to Alleged Father to provide some evidence that he asserted his paternity in some manner to defeat summary termination and thereby require the Department to prove predicate grounds and best interest.

Although Section 161.002(b)(1) requires an "admission of paternity," this provision does not necessarily require that an alleged biological father file a formal acknowledgment of paternity in accordance with Section 160.302. *See In re O.R.M.*, 559 S.W.3d at 743. Our sister courts have found that summary termination is defeated when, *inter alia*, a father writes a letter to the trial court in which he states he is the child's father;[4] when a father who questions paternity throughout

---

[4] *See In re K.W.*, 138 S.W.3d 420, 430 (Tex.App.—Fort Worth 2004, pet. denied); *In re U.B.*, No. 04-12-00687-CV, 2013 WL 441890, at *2 (Tex.App.—San Antonio Feb. 6, 2013, no pet.)(mem. op.).

a pending case files a general denial and fills out an appointed counsel request form in which he states he is the child's parent;[5] when a father acknowledges paternity to the Department and agrees to take a paternity test;[6] when a father appears at trial and admits he is the child's father in open court;[7] or when the father files an answer and a sworn affidavit identifying himself as the child's father.[8]

Although informal methods have been accepted, not all conduct or actions of an alleged parent during the pendency of a termination of parental rights case qualifies as an informal admission of paternity. In *O.R.M.*, we addressed the nature of evidence required for an informal "admission of paternity" sufficient to preclude summary termination such that the Department had to meet its burden to prove a predicate ground under Section 161.001(1) and further establish the best interest of the child. *Id*. In *O.R.M.*, we held that an alleged father's signed, handwritten notation contained in the comments section of a family service plan was not an "unequivocal admission of paternity" despite the fact that the alleged father's note included general references to "my kids" and expressed a desire to protect the children from their mother. *Id*. Importantly, what we found particularly lacking in *O.R.M.* was the fact that the alleged father's note on the service plan not only failed to include an admission that he was in fact the biological father of each of the three children who were the subject of the case, but also failed to express any opposition to the termination of any rights he may have had to the children. *Id*. With his signed notation, we

---

[5] *In re V.S.R.K.*, No. 02-08-047-CV, 2009 WL 736751, at *4 (Tex.App.—Fort Worth Mar. 19, 2009, no pet.)(mem. op.).

[6] *In re K.E.S.*, No. 02-11-00420-CV, 2012 WL 4121127, at *3 (Tex.App.—Fort Worth Sept. 20, 2012, pet. denied)(mem. op.).

[7] *In re S.J.R.-Z.*, 537 S.W.3d 677, 681-82 (Tex.App.—San Antonio 2017, pet. denied).

[8] *In re C.M.C.*, 273 S.W.3d at 879.

found that alleged father, at most, had simply offered to step in if the mother did not comply with requirements imposed on her for the Department's return of the children to her. *Id*.

Here, Alleged Father concedes there is no note or other writing in the record that would arguably show that he informally acknowledged his paternity of E.O. or expressed that he wanted to oppose termination of any rights he may have with respect to E.O. Nonetheless, Alleged Father contends that he effectively admitted his paternity and opposition to termination not by "mere words on a piece of paper," but rather, by his "eighteen months of involvement in a CPS case." Specifically, he argues that his participation in certain visitations, evaluations, classes and hearings, all taken together, evidence a "man acknowledging his responsibility as a father." Other than make an assertion that he participated in services, however, Alleged Father does not cite to any record evidence directing our attention to conduct on his part, while participating in those services or being involved in the case, in which he demonstrated an "admission of paternity," or showed his opposition to termination of any rights he may have with respect to E.O. *See* TEX.R.APP.P. 38.1(i)(appellant's brief must cite to the record). Moreover, Alleged Father provides no legal authority in support of his argument, nor do we find any by our independent search, that provides that participation in certain services alone without an assertion of paternity or opposition to termination would suffice to overcome findings under Section 161.002(b)(1) to preclude summary termination.

Contrary to Alleged Father's characterization of his case involvement, our record includes testimony from CASA volunteer Sue Gremar that in observing the family's interactions, neither Alleged Father nor Mother showed interest in being with E.O., and that Alleged Father showed a "general lack of interest" in E.O. during visits. The caseworker also testified that Alleged Father refused drug testing and informed her that he did not want to have any further contact with her

14

while his case remained pending. Additionally, Alleged Father did not file any responsive pleadings in this case, nor did he make a full appearance at the final termination hearing.

Instead, the reporter's record of the hearing showed that Alleged Father entered the courtroom after the hearing had already begun and only remained briefly without ever making any statement to the court neither directly nor through his attorney. Following a brief recess asked for by his counsel, Alleged Father and Mother both exited the courtroom without offering testimony or making further comment, headed for the courthouse elevators, and did not return for the remainder of the hearing. Alleged Father's conduct in this instance falls in stark contrast with that described in *Toliver v. Texas Dep't of Family and Protective Services*, 217 S.W.3d 85, 105 (Tex.App.—Houston [1st Dist.] 2006, no pet.). In *Toliver*, the Houston court addressed a circumstance in which an alleged father who had not filed any document with the court clerk nonetheless appeared at trial prior to the termination of his parental rights, unequivocally asserted he was the child's father, and requested that his parental rights not be terminated. *Id.* The court held that father's "appearing at trial before his rights were terminated and admitting that he was in fact [the child's] father, triggered his right to require [the Department] to prove that he engaged in one of the types of conduct listed in Section 161.001(1) before his parental rights could be terminated." *Id.*

Given that Alleged Father made no representations in the trial court or otherwise of record that he was E.O.'s father, that he admitted his paternity, or that he opposed termination of rights he may have to E.O., we hold that the trial court had legally and factually sufficient evidence to support its determination under subsection 161.002(b)(1) that appellant "[did] not respond by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160" of the

Texas Family Code. *See* TEX.FAM. CODE ANN. § 161.002(b)(1); *In re O.R.M.*, 559 S.W.3d at 743; *Toliver*, 217 S.W.3d at 105. Alleged Father's Issue One is overruled.

**B.**

*Mother's Appeal*

Appellant Mother is represented on appeal by court-appointed counsel who has filed a brief in accordance with the requirements of *Anders v. California*, 386 U.S. 738, 741-44 (1967). Court-appointed counsel has concluded that, after a thorough review of the record, Mother's appeal is frivolous and without merit.

In *Anders*, the Supreme Court recognized that counsel, though appointed to represent the appellant in an appeal from a criminal conviction, had no duty to pursue a frivolous matter on appeal. *Anders*, 386 U.S. at 744. Thus, counsel was permitted to withdraw after informing the court of his conclusion and the effort made in arriving at that conclusion. *Id.* The procedures set forth in *Anders* apply to an appeal from a case involving the termination of parental rights when court-appointed counsel has determined that the appeal is frivolous. *See In re P.M.*, 520 S.W.3d 24, 27 n.10 (Tex. 2016)(per curiam)(recognizing that *Anders* procedures apply in parental termination cases); *In re J.B.*, 296 S.W.3d 618, 619 (Tex.App.—El Paso 2009, no pet.).

Counsel's brief meets the requirements of *Anders* by containing a professional evaluation of the record and demonstrating that there are no arguable grounds for reversal of the termination order. Upon receiving an *Anders* brief, we are required to conduct a full examination of all the proceedings to determine whether the appeal is wholly frivolous. *Penson v. Ohio*, 488 U.S. 75, 80 (1988). We have thoroughly reviewed the entire record, including the *Anders* brief, and we have found nothing that would arguably support an appeal. We agree with counsel's professional assessment that the appeal is frivolous and without merit. Because there is nothing in the record

16

that might arguably support the appeal, a further discussion of the arguable grounds advanced in the brief filed by court-appointed counsel would add nothing to the jurisprudence of the state. The final order terminating Mother's parental rights is affirmed.

In the prayer section of the *Anders* brief, counsel for Mother asks this Court to relieve her of this appointment and allow her to withdraw. Based on a recent change in Texas Supreme Court precedent, we cannot do so at this time. Upon determining that counsel has fully complied with the requirements of *Anders* and *Kelly* and finding that the appeal is frivolous following an independent review of the record, intermediate appellate courts typically grant motions to withdraw in criminal cases. Granting the motion to withdraw relieves counsel of any obligation to continue with a frivolous appeal. *In re D.C.*, 573 S.W.3d 860, 864 (Tex.App.—El Paso 2019, no pet.). The Texas Supreme Court has determined, however, that we must deny counsel's motion to withdraw in this parental rights termination case because a parent's statutory right to counsel in suits seeking termination of parental rights extends to all proceedings in the Texas Supreme Court, including the filing of a petition for review, and counsel's "belief" that the appeal is frivolous does not constitute "good cause" for withdrawal. *In re P.M.*, 520 S.W.3d at 27; *see also* TEX.FAM.CODE ANN. § 107.016(3)(in a suit by a governmental entity seeking the termination of parental rights, an attorney appointed to serve as an attorney ad litem for a parent or alleged father continues to serve in that capacity until the suit is dismissed, the date all appeals from the termination order are exhausted, or the date the attorney is relieved of his duties or replaced by another attorney after a finding of good cause is rendered by the court).

Accordingly, we must deny counsel's motion to withdraw. *See In re P.M.*, 520 S.W.3d at 27. In the event Mother advises appointed counsel that she wishes to challenge our decision by

filing a petition for review, "counsel's obligations can be satisfied by filing a petition for review that satisfies the standards for an *Anders* brief." *Id*. at 27-28.

## III.

## CONCLUSION

The judgment of the trial court is affirmed as to both Mother and Alleged Father.

GINA M. PALAFOX, Justice

January 17, 2020

Before Rodriguez, J., Palafox, J., and McClure, C.J. (Senior Judge)
McClure, C.J. (Senior Judge), sitting by assignment
McClure, C.J. (Senior Judge), concurring
Rodriguez, J., dissenting