

# NUMBER 13-19-00471-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RZQ, L.L.C., HAMEED QURAISHI, M.D.,
RAFATH QURAISHI, M.D., AADAM
QURAISHI, M.D., AND ADVANCED
MEDICAL IMAGING, L.L.C.,                                    Appellants,

v.

MCCLELLAND AND HINE, INC.,                                    Appellee.

On appeal from the 389th District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Tijerina**
**Memorandum Opinion by Chief Justice Contreras**

In this appeal concerning issuance of a commercial surplus lines insurance policy,

appellants RZQ, L.L.C. (RZQ), Hameed Quraishi, M.D., Rafath Quraishi, M.D., Aadam

Quraishi, M.D.,[1] and Advanced Medical Imaging, L.L.C. argue that the trial court erred by granting summary judgment dismissing their claims against appellee McClelland and Hine, Inc. (MHI). We affirm in part and reverse and remand in part.

## I. BACKGROUND

MHI is a surplus lines insurance agent based in San Antonio.[2] In 2011, appellants hired Felipe Farias, an insurance agent, to obtain property and liability coverage for their medical offices and equipment in Brownsville, Weslaco, McAllen, and Edinburg. Farias contacted MHI underwriter Wendy O'Brien, who, in turn, contacted Dave Pulley, an underwriter with Insurance Exchange Brokerage Services (IEBS), an unlicensed surplus lines insurer and an affiliate of Prime Insurance Company (Prime). On May 18, 2011, Pulley provided a written "Indication Quote" to O'Brien. O'Brien then altered the quote by removing Pulley's and IEBS's names and contact information, by adding her own name and contact information and that of MHI, and by changing the annual premium amount. O'Brien forwarded the altered quote to Farias, and appellants accepted it.

IEBS sent a binder to MHI on June 3, 2011. *See* TEX. INS. CODE ANN. § 549.001(2) ("'Insurance binder' means a contract that provides insurance coverage pending the issuance of an original insurance policy that will be issued on or before the 30th day after the date the insurance binder is issued."). The binder was on IEBS letterhead but stated that Prime was the "Insurer." Before forwarding the binder to Farias, O'Brien altered it to

---

[1] Incorrectly spelled as "Adam Quraishi, M.D." in the final judgment.

[2] Surplus lines insurance is an exception to the general statutory restriction on unauthorized insurers created for consumers who have difficulty obtaining coverage. *Johnson v. State Farm Mut. Auto. Ins.*, 520 S.W.3d 92, 98 (Tex. App.—Austin 2017, pet. denied). A surplus lines insurer is not authorized to issue polices in Texas but may be eligible to "place" surplus lines policies through a licensed surplus lines agent, provided the insurer complies with strict capitalization and registration requirements. *Id.*; *see generally* TEX. INS. CODE ANN. ch. 981.

replace Prime's name and contact information with those of MHI.

It is undisputed that neither the quote nor the binder indicated that, as part of the proposed policy with Prime, appellants would be required to agree to forum-selection and choice-of-law clauses. It is also undisputed that MHI did not advise appellants of the existence of those clauses in the Prime policy.

On June 22, 2011, a storm caused damages to appellants' office and equipment in McAllen. Appellants submitted a claim to Prime asserting they had incurred over $1.4 million in property damages from the storm, including the loss of an $800,000 MRI machine. A dispute arose, and Prime refused to pay the claim. In June of 2013, appellants sued Prime and other defendants[3] in Hidalgo County, Texas, for breach of contract, negligence, and violations of the Texas Deceptive Trade Practices Act (DTPA) and the Texas Insurance Code. Appellants alleged that Prime failed to pay "reasonable and necessary benefits" as the policy required; misrepresented a material fact or policy provision; and failed to effectuate a prompt, fair, and equitable settlement of their storm damage claim. *See id.* § 541.060.

Prime moved to dismiss appellants' suit on grounds that the policy contained a mandatory forum selection clause requiring any suit arising from the policy to be brought in Utah.[4] The trial court denied Prime's motion to dismiss, and Prime filed a petition for

---

[3] The suit also named Farias, Maryland Casualty Company, Zurich American Insurance Company, and Javier Lujan as defendants.

[4] The policy stated:

SECTION X — CONSENT TO EXCLUSIVE JURISDICTION

The Insured understands and acknowledges that the Insurer conducts its business activities, including underwriting, risk management and claims services within the State of Utah. The Insured represents and acknowledges that the Insured has purposefully directed its actions to procure the insurance services of the Insurer within the State of Utah and, for that purpose, will make continuous and systematic requests for the Insurer's services in

3

writ of mandamus with this Court. In August of 2014, Prime tendered a check to appellants in the amount of $48,500—purportedly representing the value of a replacement MRI machine, with interest since February 2013—but appellants refused the check. Subsequently, we conditionally granted mandamus relief to Prime and directed the trial court to enforce the forum-selection clause and to grant Prime's motion to dismiss. *In re Prime Ins.*, No. 13-14-00490-CV, 2014 WL 5314514 (Tex. App.—Corpus Christi–Edinburg Oct. 16, 2014, orig. proceeding) (mem. op.). On February 13, 2015, in compliance with our ruling, the trial court vacated its earlier denial and rendered an order dismissing the claims against Prime.

On June 3, 2015, appellants filed an amended petition adding MHI as a defendant on claims of breach of contract, breach of fiduciary duty, negligence, and fraudulent inducement. Appellants argued MHI breached its agreement and its duties by, among other things, "failing to procure a commercial insurance policy in accordance with the quote and binder." They claimed that the binder (as "altered" by O'Brien) violated the insurance code because it was a "surplus lines document" but did not include a mandatory statutory disclaimer; did not state the name and address of the "true" insurer; and did not state the "coverage, conditions, and term of the insurance." *See* TEX. INS. CODE ANN. § 891.101(b), (c). Appellants also argued that MHI violated the insurance code because it: (1) lacked the authority to deliver the binder to Farias; and (2) failed to promptly issue

the State of Utah. The Insured acknowledges that, by entering into this policy of insurance, the Insured is deemed to be transacting business within the State of Utah such that the courts of Utah may exercise jurisdiction over it regarding any issues arising out of this Policy. In addition, the Insured hereby understands and consents to the jurisdiction of the courts in the State of Utah and agrees that those courts shall be the exclusive forum for the resolution of any claims or disputes arising between the parties related to any insurance coverage issues and any payments due the Insured under the Policy, unless both the Insurer and Insured agree otherwise in writing.

and deliver the underlying Prime policy or a certificate, cover note, or other confirmation of insurance. *See id.* § 981.103; 28 TEX. ADMIN. CODE § 15.105. They further asserted that MHI misrepresented the terms and conditions of coverage and thereby fraudulently induced them into entering into the Prime policy.

MHI filed a motion for traditional and no-evidence summary judgment in March 2016, arguing that appellants' claims are barred by the law of the case doctrine due to our 2014 opinion in the mandamus proceeding. MHI also argued: (1) appellants' breach of contract claim fails because no contract existed between appellants and MHI and there is no evidence of breach; (2) appellants' negligence and fiduciary duty claims fail because there was no evidence MHI, as an agent or broker, breached any duty to appellants; and (3) appellants' fraud claim fails because they did not assert MHI made any misrepresentations about the coverage provided under the Prime Policy.

Appellants filed a response to the motion alleging that the law of the case doctrine does not apply because there has been no direct appeal in the case. Appellants further contended that there is more than a scintilla of evidence to support their claims. In support, they attached an affidavit by appellant Hameed Quraishi stating that MHI issued a quote which "created a false impression" because it "did not disclose restrictive enforcement of rights and remedies provisions, including, but not limited to a Utah forum selection clause and Utah choice of provision." Quraishi averred that "I would not have had an opportunity to discover the forum selection clause until the commercial insurance policy was delivered after coverage was bound." Quraishi stated that appellants would not have accepted the quote if MHI had made "a full disclosure" concerning the forum selection and choice of law clauses. He also stated that MHI "failed to promptly deliver"

5

the Prime policy to appellants as required by the insurance code, *see* TEX. INS. CODE ANN. § 981.103(a); and that if the policy had been promptly delivered, appellants "would have procured additional insurance to allow for claims in Texas." Quraishi claimed in his affidavit that, as a result of MHI's negligence and misrepresentations, appellants incurred over $90,000 in attorney's fees required to litigate a declaratory judgment action brought by Prime against appellants in Utah.

The trial court granted MHI's summary judgment by written order on January 24, 2016, but later vacated that order and granted appellants' motion to file a supplemental summary judgment response. Appellants did so in 2017, attaching additional evidence, including excerpts of deposition testimony by a Prime corporate representative, Jaime Gustafson, stating that it was "MHI's responsibility" to "distribute the quote, binder and policy documentation" to appellants, and that MHI would have been familiar with Prime's forms and thus would have known about the forum selection and choice of law clauses in the policy. According to Gustafson, a "Policy Receipt Form and Coverage Conditions Summary" was attached to the policy which set forth the subject forum selection and choice of law clauses and stated:

> TO THE PRODUCER AND INSURED: Coverage provided under the Policy referenced below is expressly conditioned upon you (the "Insured") reviewing and properly executing and returning this Policy Receipt Form and Coverage Conditions Summary ("Form") to us (the "Insurer") within 10 days of receipt of the Policy.

Gustafson stated that it was "the broker's responsibility" to get the form signed by the insured, and yet appellants did not sign and return the form. Appellants' supplemental response also included deposition testimony by an MHI supervisor, Leslie Ann Lloyd, stating that it appeared from an internal email that MHI had not yet received a copy of the policy as of August 25, 2011.

6

MHI filed an amended summary judgment motion on May 9, 2019, reiterating the arguments made in its earlier motion and additionally asserting that each of appellants' claims are barred by limitations. Appellants filed a response to the amended motion reiterating their earlier arguments and also contending their claims are not time-barred because "the facts that authorized [them] to seek judicial remedy against MHI for its representations concerning the Policy did not come into existence until February 13, 2015," the date on which the trial court first enforced the forum selection clause by dismissing their claims against Prime. Appellants did not contend in their response to the amended summary judgment motion that the limitations period was tolled due to application of the discovery rule, though they made that allegation in their live petition dated November 16, 2016.

The trial court granted MHI's summary judgment motion, and this appeal followed.[5]

## II. DISCUSSION

By a single issue on appeal, appellants contend the trial court erred in granting summary judgment for MHI. We construe the issue as comprising three sub-issues: (1) summary judgment was improper on law of the case grounds; (2) summary judgment was improper on limitations grounds; and (3) summary judgment was improper on no-evidence grounds. We address each in turn.

### A. Standard of Review and Applicable Law

A summary judgment motion may be brought on traditional or no-evidence grounds. A movant for traditional summary judgment has the burden to establish that no

---

[5] Appellants' claims against Farias were severed into a separate cause number. Farias is not a party to this appeal.

7

genuine issue of a material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014). A no-evidence summary judgment alleges that, after adequate time for discovery, there is no evidence of one or more essential elements of a claim or defense on which the other party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). If, in response to a summary judgment motion, the non-movant produces more than a scintilla of evidence to raise a fact issue on the challenged elements, then summary judgment is improper. *Amedisys, Inc.*, 437 S.W.3d at 511; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms. Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). Summary judgment evidence is viewed in the light most favorable to the non-movant. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009).

We review summary judgments de novo. *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 790 (Tex. 2019). "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c).

**B. Law of the Case**

MHI contended in its amended summary judgment motion that the law of the case, as set forth in our 2014 ruling on appellants' mandamus petition, compels a ruling in its favor. By its first sub-issue on appeal, appellants argue the trial court erred if it granted

8

summary judgment to MHI on this basis.

Under the law of the case doctrine, "a decision rendered in a former appeal of a case is generally binding in a later appeal of the same case." *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 182 (Tex. 2012). By narrowing the issues in successive stages of the litigation, the doctrine is intended to achieve uniformity of decision as well as judicial economy and efficiency. *Briscoe v. Goodman Corp.*, 102 S.W.3d 714, 716 (Tex. 2003). But a decision rendered on an issue before the appellate court does not absolutely bar re-consideration of the same issue on a second appeal. *Id*. In particular, the law of the case doctrine "does not necessarily apply when either the issues or the facts presented at successive appeals are not substantially the same as those involved on the first trial." *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986); *Creative Thinking Sources, Inc. v. Creative Thinking, Inc.*, 74 S.W.3d 504, 511 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.). "Application of the doctrine lies within the discretion of the appellate court and depends on the particular circumstances surrounding that case." *Briscoe*, 102 S.W.3d at 716.

In our 2014 opinion, we reviewed and rejected at least seven different reasons offered by appellants for why the forum selection clause should not be enforced with respect to their suit against Prime. *See In re Prime Ins.*, 2014 WL 5314514, at *5 (concluding that the clause applies to the specific claims at issue because those claims "arose out of" Prime's obligations under the policy); *id.* at *7 (finding Prime did not waive enforcement of the clause by filing a separate subrogation suit in Texas against a third party who was not a signatory to the policy); *id.* at *8–9 (rejecting appellants' claim that enforcement would be "fundamentally unfair" because appellants "[were] not given any

9

notice" that the policy included the clause); *id.* at *10 (rejecting appellants' claim that the clause is "fundamentally unfair" because appellants did not have the right to reject the insurance policy with impunity upon being notified of the clause); *id.* at *11 (rejecting appellants' argument that the clause is unenforceable because the particular forum was selected to discourage claims); *id.* (rejecting appellants' argument that the clause is unenforceable because Prime engaged in fraud and overreaching); *id.* at *12 (rejecting appellants' argument that the forum-selection clause was not supported by consideration).

MHI argued in its summary judgment motion that we "held as a matter of law" the following in our 2014 opinion: (1) that appellants are "charged with knowledge of the contents" of the Prime Policy, including the forum selection clause; (2) that "the quote and binder did not reference the forum selection clause because the quote and binder did not constitute the parties' entire agreement"; (3) that appellants "would have had the opportunity to reject the contract without incurring financial penalty if they had informed themselves regarding the terms of the Policy prior to execution"; (4) that "[a]ny inconvenience associated with litigating in Utah was foreseeable at the time of contracting"; (5) that appellants "could proceed in Utah"; and (6) that "[l]itigating in Utah would not deprive [appellants] of their day in court." MHI argued that, therefore, we are bound to conclude that all of appellants' claims against it fail.

In their summary judgment response and on appeal, appellants argue that the law of the case doctrine cannot apply here because there has been no previous appeal and the case was never remanded to the trial court; instead, we granted conditional mandamus relief in an original proceeding. *See Perry Homes v. Cull*, 258 S.W.3d 580,

585–86 (Tex. 2008) (holding, where appellees contended that pre-arbitration mandamus proceedings established law of the case and barred the appellants from raising the same arguments on appeal, that because "mandamus is a discretionary writ, 'its denial, without comment on the merits, cannot deprive another appellate court from considering the matter in a subsequent appeal'" (quoting *Chambers v. O'Quinn*, 242 S.W.3d 30, 32 (Tex. 2007)). We disagree. Our 2014 opinion in *In re Prime* was not a summary denial without comment, as was the allegedly binding precedent in *Perry Homes. See id.*; *In re Prime Ins.*, 2014 WL 5314514. In any event, the law of the case doctrine may apply whenever the law and the facts are substantially the same; it does not matter that the allegedly binding precedent was developed in an original proceeding rather than a direct appeal. *See Roman v. Ramirez*, 573 S.W.3d 341, 348 (Tex. App.—El Paso 2019, pet. denied) ("[A] legal issue actually resolved in a mandamus action becomes law of the case in subsequent proceedings in the same case."); *In re United Servs. Auto. Ass'n*, 521 S.W.3d 920, 928 (Tex. App.—Houston [1st Dist.] 2017, orig. proceeding) (applying law of the case to reverse a new trial order on the same grounds as decided in an earlier mandamus proceeding in the same case); *In re Guardianship of Cantu de Villarreal*, 330 S.W.3d 11, 20–21 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.) (holding law of the case doctrine prevented reconsideration of issue decided in earlier mandamus proceeding).

Appellants additionally argue that our earlier opinion does not compel dismissal of their claims against MHI because we never specifically addressed those claims in that opinion; instead, we only addressed the claims against Prime.[6] We agree. There are

---

[6] In their summary judgment response, appellants pointed out that MHI previously filed petitions for writ of mandamus with this Court and with the Texas Supreme Court seeking dismissal of appellants' claims on law-of-the-case grounds, and that both of those petitions were denied. *See In re McClelland & Hine,*

11

substantial differences between the issues and facts presented here and those we considered in 2014. Most glaringly, the claims at issue here are against MHI, not against Prime, and the factual allegations made against the two parties are not substantially the same. As to Prime, appellants raised claims of negligence, breach of contract, breach of the duty of good faith and fair dealing, and DTPA and insurance code violations. *In re Prime Ins.*, 2014 WL 5314514, at *1. They specifically alleged that Prime failed to adequately investigate its storm damage claim, provided an "inaccurate and low ball estimate" as to the damaged MRI machine, and "failed to return [their] phone calls." *Id.* Appellants' allegations against Prime exclusively concerned Prime's alleged mishandling of their storm damage claim. Those claims bear little resemblance to the claims appellants have brought against MHI, which are based on MHI's alleged failure to procure a policy in accordance with the quote and binder.

The principal conclusion which MHI urges was made in 2014 and is binding on us here is that appellants are deemed to have constructive knowledge of all policy terms, including the forum-selection clause, even though they were subjectively unaware of them at the time they accepted the quote.[7] In that regard, we note that the 2014 original proceeding was decided on the limited record available to the trial court at the time of

_____

*Inc.*, No. 13-16-00527-CV, 2016 WL 5846551, at *1 (Tex. App.—Corpus Christi–Edinburg Oct. 6, 2016, orig. proceeding [mand. denied]). Appellants do not argue that MHI's law-of-the-case argument is itself barred by the law of the case doctrine due to these rulings.

[7] Though MHI claims that we set forth certain conclusions of law in 2014 which require judgment in its favor here, most of those specific conclusions would not compel a ruling in favor of MHI. For example, MHI claims that our 2014 opinion binds us to conclude that "[l]itigating in Utah would not deprive [appellants] of their day in court." We made that conclusion in the context of determining whether the forum-selection clause is "fundamentally unfair" so as to be unenforceable. *See In re Prime Ins.*, 2014 WL 5314514, at *11. The enforceability of the forum-selection clause with respect to Prime may have been decided, but that decision does not establish MHI's entitlement to judgment as a matter of law on any of the grounds alleged in its summary judgment motion.

Prime's motion to dismiss, and the record has since developed significantly.

In 2014, we noted that the Texas Supreme Court has rejected the argument that "the failure to provide a copy of an agreement containing a forum selection clause to a claimant constitutes the type of fundamental unfairness that precludes enforcement of the forum selection clause." *Id.* at *9 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) ("[F]orum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness."); *In re Int'l Profit Assocs.*, 286 S.W.3d 921, 924 (Tex. 2009) (orig. proceeding) (finding that the "fundamental fairness" analysis concerns only "the clause itself" and does not apply to the argument that the "[the claimant's] representative was never given the first page of the agreement that included the forum-selection clause")). In other words, "simply being unaware of a forum-selection clause does not make it invalid." *Id.* We then concluded as follows:

> [P]arties to a contract have an obligation to protect themselves by reading what they sign and, absent a showing of fraud, cannot excuse themselves from the consequences of failing to meet that obligation. If we were to determine otherwise, it would require a party seeking to enforce a forum-selection clause to prove that the opposing party was separately shown each provision of every contract sought to be enforced and was subjectively aware of each clause. And, specifically applicable to this case, *an insured is charged with knowledge of the provisions of the insurance policy*, that is, it will be deemed to know the contents of the contract it makes. In the instant case, although the quote and binder did not reference the forum selection clause, *it is clear that the quote and binder did not constitute the parties' entire agreement*. There is no evidence in the record that Prime concealed the forum-selection clause or evidence proving Prime concealed the clause with an intent to defraud RZQ, thus RZQ's allegations that it was unaware of the forum selection clause are insufficient as a matter of law to prove fraud or overreaching. Accordingly, we reject RZQ's contention that Prime's alleged failure to notify RZQ that the policy contained a forum selection clause rendered enforcement of the forum selection clause fundamentally unfair.

*Id.* (emphasis added, internal citations and quotations omitted).

When we held that appellants are charged with knowledge of the forum selection

13

clause, we explicitly based that ruling on our observation that, at the time, there was "no evidence" in the record "that RZQ accepted the surplus lines coverage in a different manner than that contemplated by Prime's offer." *Id.* at *9 n.10. We distinguished the situation from another case where a forum selection clause was held unenforceable because "[t]he employee accepted employment with the company, but did not sign and return the letter agreement containing the forum selection clause." *Id.* (citing *Lujan v. Alorica*, 445 S.W.3d 443, 448 (Tex. App.—El Paso 2014, no pet.)). We noted that, because there was no similar evidence adduced with respect to RZQ's acceptance of Prime's offer, there was no basis to conclude that "Prime failed to establish the parties' mutual assent or meeting of the minds regarding the forum selection clause." *Id*. However, at least a scintilla of such evidence has now been produced—specifically, Quraishi testified that the quote provided by MHI did not include the forum selection and choice of law clauses, and that RZQ would not have accepted the quote if it had stated those terms would be part of the policy. And it is undisputed that (1) appellants never received a copy of the policy until August 2011, and (2) they never signed and returned the "Policy Receipt Form and Coverage Conditions Summary," which explicitly reiterated and emphasized the forum selection and choice of law clauses, and which by its own terms was required to be signed in order for the policy to be effective. The evidence which has been produced since 2014 has therefore brought this case into closer alignment with *Lujan*. *See Lujan*, 445 S.W.3d at 448 ("Ordinarily, an offer's terms prescribing the time and manner of its acceptance must be satisfied as prescribed to create a contract.").

In fact, the case for enforcement is arguably weaker here than it was in *Lujan*. Here, not only did appellants decline to sign and return the form which contained the

forum selection clause, they also declined to accept benefits under the policy after being made aware of the clause—this contrasts with the plaintiff in *Lujan*, who accepted employment with the defendant *after* receiving (and declining to sign) the letter containing the forum-selection clause. *See id.* Unlike in *Lujan*, there was no reason for appellants in this case to believe that their acceptance of MHI's offer to procure a policy would require them to agree to a forum selection provision with the insurer. Instead, the offer was silent as to the existence of the subject clauses. The clauses were not among the "contents" of the offer communicated to appellants, nor were they incorporated by reference into that offer. *Cf. In re Prime Ins.*, 2014 WL 5314514, at *9. ("[A]n insured is charged with knowledge of the provisions of the insurance policy, that is, it will be deemed to know the contents of the contract it makes.")

This situation is also not precisely akin to *In re International Profit Associates*, 286 S.W.3d at 922. That case concerned whether it is fundamentally unfair to enforce a forum-selection clause when the clause has not been specifically pointed out to the complaining party. *See id*. There was no dispute that the clause was actually explicitly set forth in a document which the plaintiff duly executed. *See id.* at 922–23 (noting that the plaintiff "signed a contract" containing a forum-selection clause on the first page). The *International Profit Associates* Court noted that "simply being unaware of a forum-selection clause does not make it invalid," 286 S.W.3d at 924, but it was undisputed that the insured should have discovered the clause with the use of reasonable diligence—i.e., it should have read the contract. *See id.* (citing *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 233 (Tex. 2008) (orig. proceeding) (per curiam) ("[P]arties to a contract have an obligation to protect themselves by reading *what they sign* and, absent a showing of fraud,

15

cannot excuse themselves from the consequences of failing to meet that obligation." (Emphasis added)). In contrast, appellants' evidence here, if believed by the trier of fact, would support a finding that they had no ability or opportunity to discover the existence of the clause, with the use of reasonable diligence, prior to the time coverage was bound.

We note that, when an insurance binder incorporates policy terms implicitly or by reference, those terms may be enforced even though the formal policy itself has not yet been issued or made available to the insured. *See, e.g.*, *Dalton v. Norwich Union Fire Ins. Soc.*, 213 S.W. 230, 231 (Tex. Comm'n App. 1919). In those situations, the binder "is to be construed in accordance with the terms and subject to the conditions of the standard form of policy in use by the insurer at the time." *Id.*; *see Ranger Cnty. Mut. Ins. v. Chrysler Credit Corp.*, 501 S.W.2d 295, 298 (Tex. 1973) ("As long as a binder is in effect, the insured may look to the form of the contemplated policy for coverage, duration, cancellation, and other terms."); *see also QB Invs., LLC v. Certain Underwriters at Lloyd's, London*, No. 01-10-00718-CV, 2011 WL 3359683, at *3 (Tex. App.—Houston [1st Dist.] Aug. 4, 2011, no pet.) (mem. op.) ("It is well established that coverage provided under a binder is determined based on reference to the terms and conditions contained in the standard form of policy in use by the insurer at the time the binder is issued."). Here, however, neither the quote nor the binder explicitly or implicitly referred to any standard policy form. Instead, the quote explicitly stated that the policy to be issued was a "manuscript" policy—i.e., it was customized and not based on a standard form. *See Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, 882 F.3d 952, 958 (10th Cir. 2018) ("Policies that deviate from the standard [commercial general liability] policy forms and endorsements are called 'manuscript' policies."); *see also Vought Aircraft Indus., Inc. v. Falvey Cargo*

*Underwriting, Ltd.*, 729 F. Supp. 2d 814, 823 (N.D. Tex. 2010); *Treesdale, Inc. v. TIG Ins.*, 681 F. Supp. 2d 611, 622 (W.D. Pa. 2010) ("Manuscript policies do not provide 'boilerplate' coverage, but are negotiated between the parties as to each item."). There is no reason in this case to impute knowledge of the forum-selection clause to appellants before the policy was made available to them.

As elucidated above, the parties, claims, and facts at issue here are different than those before this Court in 2014. Therefore, we decline to find that the law of the case doctrine compels a ruling in MHI's favor on any of appellants' claims. Appellants' first sub-issue is sustained.

## C. Limitations

MHI's 2019 amended summary judgment motion also argued that all of appellants' claims are barred as a matter of law on limitations grounds. Appellants contend by their second sub-issue on appeal that the trial court erred if it granted summary judgment on this basis.

The parties agree as to which statutes of limitations apply to each of appellants' claims against MHI. Appellants' breach of contract, fraudulent inducement, and breach of fiduciary duty claims are subject to four-year limitations periods. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(4) (fraud); *id.* § 16.004(a)(5) (breach of fiduciary duty); *id.* § 16.051 (residual statute of limitations); *see also Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (applying residual statute of limitations to a general breach of contract claim). Their other claims against MHI are subject to two-year limitations periods. *See* TEX. BUS. & COM. CODE ANN. § 17.565 (DTPA); TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (negligence); TEX. INS. CODE ANN. § 541.162(a) (insurance code). The limitations period

begins when the cause of action accrues, and "[g]enerally, a cause of action accrues when a wrongful act causes a legal injury." *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 623 (Tex. 2011); *see Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003) ("In most cases, a cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur.").

The discovery rule defers accrual of a cause of action "until the claimant knows or, by exercising reasonable due diligence, should know of the facts giving rise to the claim." *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001); *see* TEX. INS. CODE ANN. § 541.162(a)(2) (applying discovery rule to insurance code claims).[8] "An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence." *Id.* at 734–35. Appellants pleaded the discovery rule in their live petition.

A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999); *see* TEX. R. CIV. P. 166a(c). Thus, the defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury. *KPMG Peat Marwick*, 988 S.W.2d at 748.

---

[8] The discovery rule is not applicable to claims for breach of contract for sale of goods. TEX. BUS. & COM. CODE ANN. § 2.725(b) ("A cause of action [for breach of contract for sale of goods] accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."). This case does not involve the sale of goods.

MHI contended in its summary judgment that the limitations period on appellants' claims began to run on May 27, 2011, the date appellants accepted MHI's quote and paid the premium and, according to the policy, the date coverage began. Appellants first named MHI as a defendant on June 3, 2015,[9] more than four years later; accordingly, MHI argued that all of appellants' claims are time-barred. In response, appellants alleged that their claims did not accrue until February 13, 2015, which is when the trial court dismissed the claims against Prime pursuant to our conditional mandamus ruling. Appellants argued that, before that date, they did not yet "suffer legal injury from MHI's misrepresentations" because they had "not yet been forced to bring their claim against Prime in a forum outside of Texas." They stated that, "[f]or the sake of argument, the only other date that could plausibly be argued as being the accrual date" would be October 16, 2014, the date we handed down our opinion directing the trial court to enforce the forum-selection clause and to grant Prime's motion to dismiss.

In its discussion of limitations on appeal, MHI mainly relies on our 2014 ruling that appellants are "charged with knowledge" of the terms of the policy, including the forum-selection clause. *See In re Prime Ins.*, 2014 WL 5314514, at *9. However, for the reasons explained above, our 2014 opinion is not binding on us here. In any event, though we stated in 2014 appellants are charged with knowledge of the policy terms, we did not state that this knowledge is imputed to appellants on any particular date. Thus, even if we were bound by our 2014 opinion, our finding there that appellants are "charged with knowledge" of the forum-selection clause does not itself settle the question of when the limitations

---

[9] Appellants' statutory claims against MHI were first brought in their sixth amended petition dated November 16, 2016. However, because those claims were not "wholly based on a new, distinct, or different transaction or occurrence," they relate back to the date when appellants first named MHI as a defendant. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.068.

period began to run.

That said, under these circumstances, we cannot conclude that appellants' claims against MHI accrued as late as 2014 or 2015. Appellants' negligence, breach of contract, and breach of fiduciary claims against MHI share the same central factual allegations— i.e., that MHI failed to procure a policy in accordance with the quote and binder and filed to advise appellants of the existence of the forum-selection and choice-of-law clauses in the Prime policy. Appellants' statutory claims are based on the same conduct.[10] However, as we noted in our 2014 opinion, a copy of the policy was filed with the Surplus Lines Stamping Office of Texas (SLTX)[11] on June 16, 2011. *In re Prime Ins.*, 2014 WL 5314514, at *8. Moreover, the storm which gave rise to appellants' claim under the policy occurred on June 22, 2011. Thus, with the use of reasonable diligence, appellants should have

---

[10] As to their DTPA claim, appellants generally alleged in their live petition that MHI "committed one or more deceptive trade practices as outlined in [§] 17.45 of the [DTPA]." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.45. As to their insurance code claims, appellants alleged that MHI violated § 541.051 of the insurance code by:

> 1. making, issuing, or circulating or causing to be made, issued, or circulated an estimate or statement misrepresenting with respect to a policy issued or to be issued the terms of the policy; and

> 2. making, issuing, or circulating or causing to be made, issued, or circulated an estimate or statement misrepresenting with respect to a policy issued or to be issued the benefits or advantages promised by the policy.

*See* TEX. INS. CODE ANN. § 541.051. Appellants further alleged that MHI violated § 541.061 of the insurance code by:

> 1. making an untrue statement of material fact;

> 2. making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact; and

> 3. failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of the Texas Insurance Code.

*See id.* § 541.061.

[11] SLTX is a non-profit organization created under the insurance code to review and record surplus lines policies placed by licensed Texas surplus lines agents and to assist the Commissioner of Insurance in evaluating the eligibility of surplus lines insurers. *See* TEX. INS. CODE ANN. §§ 981.151, .154, .158; *Strayhorn v. Lexington Ins.*, 128 S.W.3d 772, 775 (Tex. App.—Austin 2004), *aff'd*, 209 S.W.3d 83 (Tex. 2006). Texas-licensed surplus lines agents must file a copy of every policy placed through them with SLTX within sixty days of a policy's effective or issue date. *See id.* § 981.105.

recognized the nature of their injury by that date, at the latest. *See KPMG Peat Marwick*, 988 S.W.2d at 748. It is true that appellants' claimed damages were largely incurred in defending against Prime's declaratory judgment suit in Utah, and that this out-of-state defense was necessary only because of our ruling in 2014 that the forum-selection clause was enforceable. But the limitations period begins running when an injury is caused by the wrongful act, even if "all resulting damages have yet to occur." *Provident Life*, 128 S.W.3d at 221.

We conclude that MHI established as a matter of law that appellants' claims accrued no later than June 22, 2011. Because appellants first brought suit against MHI on June 3, 2015, their negligence, DTPA, and insurance code claims are barred by the two-year statute of limitations. TEX. BUS. & COM. CODE ANN. § 17.565; TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a); TEX. INS. CODE ANN. § 541.162(a). Their remaining claims, however, are not time-barred because they were brought within four years of accrual. *See* TEX. BUS. & COM. CODE ANN. § 2.725(a) (breach of contract); TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(4) (fraud); *id.* § 16.004(a)(5) (breach of fiduciary duty).

We sustain in part and overrule in part appellants' second sub-issue.

## D. No-Evidence Summary Judgment

As to the claims against it which are not barred by limitations—breach of contract, breach of fiduciary duty, and fraud—MHI's amended summary judgment motion also alleged that there is no evidence of certain elements of those claims. *See* TEX. R. CIV. P. 166a(i). Appellants argue by what we construe as their third sub-issue that the trial court erred if it granted summary judgment on these grounds.

As to appellants' breach of contract claim, MHI argued that there is no evidence of

21

a valid contract between it and appellants for the issuance of a policy without a forum-selection clause. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018) (noting that the essential elements of a breach of contract action are: "(1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach"). MHI also argued that, even if there was a valid contract in place, there was no evidence of breach because the contract did not specify that MHI had to procure a policy lacking a forum-selection clause. As to the breach of fiduciary duty claim, MHI argued there was no evidence that MHI owed any such duty to appellants or that they breached any such duty. *See Guevara v. Lackner*, 447 S.W.3d 566, 579 (Tex. App.—Corpus Christi–Edinburg 2014, no pet.) ("The elements of a breach-of-fiduciary-duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) a breach of the duty by the defendant; and (3) injury to the plaintiff or benefit to the defendant because of the defendant's breach."). Finally, as to appellants' fraudulent inducement claim, MHI argued there was no evidence it made any affirmative misrepresentation to appellants. *See Zorrilla v. Aypco Const. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015) (noting that the elements of a common-law fraud claim are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew the representation was false or made the representation recklessly, as a positive assertion, and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the

plaintiff injury."); *White v. Zhou Pei*, 452 S.W.3d 527, 537 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("The elements of fraud by nondisclosure are (1) the defendant failed to disclose material facts to the plaintiff that the defendant had a duty to disclose; (2) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts; (3) the defendant was deliberately silent when the defendant had a duty to speak; (4) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting; (5) the plaintiff relied on the defendant's nondisclosure; and (6) the plaintiff was injured as a result of acting without that knowledge.").

To support their claims, appellants point to the quote and binder issued by MHI. They argue that the quote constituted an offer to procure insurance in accordance with the quote, and that they accepted the quote, thereby giving rise to an enforceable contract. They emphasize that O'Brien altered the original quote and binder to remove references to Pulley, IEBS, and Prime. In deposition testimony, when asked why she removed IEBS's identifying information from the "Indication Quote" before sending it to Farias, O'Brien explained: "So when I send a quote to Felipe Farias, he would know I'm the point of contact. He is to contact me, and no one else." When asked why she removed Prime's information from the binder before sending it to Farias, O'Brien similarly explained: "Because I'm the point of contact, and Felipe is not to contact the company. He's to contact me, since we have a relationship." O'Brien agreed that there was nothing in the quote or binder she sent to Farias indicating that Prime was the carrier for the policy, and she never discussed the forum-selection or choice of law clauses with Farias.

Appellants also point to an affidavit by Jose Manuel Diaz, a licensed insurance

23

agent in McAllen. Diaz testified he has more than fifteen years' experience in the insurance industry and is familiar with surplus lines agents and carriers. Diaz averred:

> 5. I sell insurance policies as an independent agent through multiple insurance carriers. One of my job duties is assisting in the purchase of insurance by acting reasonably in fully informing potential clients of the binding terms and conditions contained in insurance policies.

> 6. When selling an insurance policy, I have a duty, as all insurance and surplus lines agents do, to fully disclose all material provisions of the policy, including but not limited to, whether the insurance policy will contain a forum selection clause and choice of law provision that would be controlling in the event that a legal dispute concerning the insurance coverage were to arise between the insurer and the insured.

Appellants also attached to their summary judgment response a report by Michael Fazekas, a senior manager in "Forensic Insurance and Recovery" with BDO Consulting. Fazekas opined that, based on his analysis, appellants suffered over $2 million in damages as a result of the June 22, 2011 storm, including $489,172 to replace the damaged MRI machine and $1,669,982 due to "business interruption." Finally, appellants attached a copy of an "Independent Producer's Agreement" between MHI and IEBS. This agreement provided that MHI would earn commissions for "risks submitted by the Broker [MHI] and ultimately bound by the Company [IEBS]" and that "[t]he Broker [MHI] is the agent of the Client and not of the Company [IEBS]."[12]

We agree with MHI that appellants' evidence does not support the breach of contract claim. The quote constituted an offer by MHI to procure insurance, and that offer was accepted, but a quote only "summarizes the proposed coverage and does not contain all the terms, provisions, and exclusions that are set forth in the actual insurance policy." *See Howard v. Burlington Ins.*, 347 S.W.3d 783, 789–90 (Tex. App.—Dallas 2011, no

---

[12] The "Independent Producer's Agreement" itself contained a Utah forum-selection and choice-of-law provision.

pet.). Here, in particular, the quote did not state that the contemplated policy contained a forum-selection clause, but it also did not state that the policy lacked such a clause. Appellants have provided no evidence indicating that they ever communicated to MHI their desire for a policy lacking a forum-selection clause, nor have they provided any evidence indicating that their desire was apparent from the context or the prior dealings between the parties. We conclude that there is less than a scintilla of evidence to support a finding that the parties had an enforceable contract for MHI to procure an insurance policy without a forum-selection clause.

The evidence is also not enough to support a breach of fiduciary duty claim. Fiduciary duties may arise from certain formal relationships that are considered to be fiduciary as a matter of law or from informal, "confidential" relationships. *Garcia v. Vera*, 342 S.W.3d 721, 724 (Tex. App.—El Paso 2011, no pet.). Generally, the relationship between an insurance agent and an insured does not give rise to a formal fiduciary duty. *Envt'l Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 626–628 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). And appellants' evidence does not establish that they had a "confidential" relationship with MHI so as to give rise to an informal fiduciary duty. *See Garcia*, 342 S.W.3d at 724.

Nevertheless, even though there was no evidence that MHI breached its contract with appellants or owed a fiduciary duty to them, Diaz's affidavit testimony is more than a scintilla of evidence supporting a finding that MHI had the duty to disclose to appellants the lack of the forum-selection clause in the Prime policy. O'Brien's testimony that she altered the quote and binder to remove Prime's and IEBS's contact information, respectively, is probative of an affirmative misrepresentation regarding the origin of the

25

policy and supports a finding that MHI knew that appellants were unaware of the forum-selection clause. *See Zorrilla*, 469 S.W.3d at 153 (setting forth elements of common-law fraud claim); *White*, 452 S.W.3d at 537 (setting forth elements of fraud by nondisclosure). And Quraishi's affidavit testimony indicates that appellants relied on MHI's failure to disclose the forum-selection clause when deciding to accept the quote. *See Zorrilla*, 469 S.W.3d at 153; *White*, 452 S.W.3d at 537.

MHI argues that, because an insurance quote is only intended to summarize the proposed *coverage* and not all the terms and conditions of the policy, a broker can be held liable only when it makes a misrepresentation about coverage. MHI cites cases in which misrepresentations affecting coverage have formed the basis of a fraud claim against an insurance broker. *See, e.g., May v. United Servs. Ass'n of Am.*, 844 S.W.2d 666, 669 (Tex. 1992). However, MHI cites no authority, and we find none, establishing that an insurance broker is immune from liability for misrepresentations concerning matters other than the extent of coverage under the proposed policy. Instead, as appellants note, the insurance code places the responsibility on surplus lines agents such as MHI to obtain the policy from the insurer and deliver the policy to the insured "as soon as reasonably possible" upon the insured's request. *See* TEX. INS. CODE ANN. § 981.103(b).

Here, appellants asserted that MHI misrepresented the Prime policy, either through affirmatively altering the quote and binder or through non-disclosure, and they provided more than a scintilla of evidence to support that assertion.[13] Accordingly, the

---

[13] In the section of its summary judgment motion addressing the fraud claim, MHI raised no-evidence grounds only as to the misrepresentation element. We therefore do not express an opinion as to whether the summary judgment evidence supported the other fraud elements. *See* TEX. R. CIV. P. 166a(c).

trial court erred if it granted no-evidence summary judgment on appellants' fraudulent inducement claim. We sustain appellants' third sub-issue in part.

### III. CONCLUSION

The trial court's summary judgment is reversed with respect to appellants' fraudulent inducement claim, and with respect to that claim, we remand the cause to the trial court for further proceedings consistent with this opinion. The remainder of the trial court's summary judgment, dismissing appellants' other claims against MHI, is affirmed.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
15th day of April, 2021.