# IN THE SUPREME COURT OF TEXAS

═══════════════
No. 14-0486
═══════════════

BANK OF AMERICA, N.A., PETITIONER,

v.

DWIGHT EISENHAUER, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LORENE BELCHER WALTER, DECEASED, RESPONDENT

═══════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════════

**PER CURIAM**

Bank of America, N.A., contends the court of appeals erred in affirming the trial court's judgment in favor of Dwight Eisenhauer, in his capacity as executor of Lorene Walter's estate. A jury found in the Bank's favor, but the trial court granted judgment for Eisenhauer notwithstanding the jury's verdict. We agree with the jury and render a take-nothing judgment based on the verdict.

The relevant facts are undisputed. Lorene and Harley Walter, wife and husband, owned a certificate of deposit account with Bank of America. The account was subject to a deposit agreement, a lengthy form agreement between the Bank and its customers. The account was a survivorship account, meaning that following the death of a spouse, the funds in the account were to remain the property of the surviving spouse. The account was also a payable-on-death account, meaning that following the death of the surviving spouse, the account became payable to designated beneficiaries

rather than becoming the property of the surviving spouse's estate. Eisenhauer and Jo Ann Day were the named beneficiaries. Eisenhauer and Day were Mrs. Walter's employees, and Eisenhauer had her power of attorney.

Mr. Walter died in June 2004. In July 2004, while Mrs. Walter was still alive, Day presented Mr. Walter's death certificate to the Bank and asked it to distribute the funds in the account. The Bank did so, issuing checks to Eisenhauer and Day in equal sums. The Bank admits it violated the deposit agreement because these payments were made before Mrs. Walter's death.

When Eisenhauer received his check, he notified the Bank that Mrs. Walter was still alive. Using his power of attorney, he deposited his check into an account in Walter's name, making himself beneficiary upon her death. Eisenhauer told the Bank that it needed to get the other half of the money back from Day. There was evidence the Bank assured Eisenhauer it would make Walter whole, presumably meaning the funds distributed to Day would be returned by Day to Walter's account, or Walter would otherwise be reimbursed the premature distribution to Day. The Bank demanded that Day return the funds she had received from the Walter account. At one point before Mrs. Walter's death a temporary guardian of Mrs. Walter signed an "indemnity agreement" with the Bank stating the guardian's desire that Day should retain the funds she had received. After Mrs. Walter died, in May 2005, the Bank refused to pay the Walter estate the amount of the distribution to Day, essentially taking the position that the money was now owed to Day anyway under the deposit agreement and was never a part of Mrs. Walter's estate.

After Mrs. Walter died, Eisenhauer became independent executor of her estate. Eisenhauer sued the Bank for breach of the deposit agreement. The jury found the Bank failed to comply with

2

the agreement, but the estate suffered no damages. The trial court granted Eisenhauer's JNOV motion, and rendered judgment for $27,497.67, the amount that had been distributed to Day, plus interest, costs, and attorney fees. The court of appeals affirmed. ___ S.W.3d ___.

We agree with the Bank that the trial court erred in granting the JNOV motion. We review a JNOV under the no-evidence standard. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009). We will uphold the jury's verdict if more than a scintilla of competent evidence supports it. *Id.* Here, evidence supports the jury's finding that the estate suffered no damages.

The evidence showed that by the Walters' designation of beneficiaries, Day was to receive half the funds in the account upon Mrs. Walter's death. By contract with the Bank these funds were to pass outside the will and were never to be a part of Mrs. Walter's estate. Mrs. Walter might have suffered injury had she (or an agent acting on her behalf) attempted to withdraw funds from the account during her lifetime and for her own use, and was unable to access them because of the premature distribution to Day.[1] But there was no evidence of such an attempted withdrawal of funds. Hence, neither Walter nor her estate lost anything when Day received a distribution of funds from the account. Under the evidence the jury heard, whether the funds had stayed in the account until Mrs. Walter died, or were distributed after Mr. Walter died but before Mrs. Walter died, Mrs. Walter's estate received exactly the same from the account: nothing. A zero balance was the result

---

[1] Indeed, federally insured banks never have cash on hand equal to more than a fraction of customers' deposits. *See Fed. Open Market Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 344 n.3 (1979) (describing reserve ratio under Regulation D). Customers would be injured by this difference between cash on hand and deposits only if they are unable to withdraw or otherwise access their deposits.

3

the Walters intended when they set up a payable-on-death account making Day and Eisenhauer the beneficiaries.

Eisenhauer argues that Walter was damaged in the amount the Bank gave to Day in violation of the deposit agreement. This argument conflates breach and damages. The Bank breached the deposit agreement when it distributed funds from the account to Day, but the estate suffered no damages. Neither Walter, while alive, nor her estate suffered any monetary damages from the Bank's breach. Nor does Eisenhauer point to any evidence of injury that might be characterized as non-monetary injury on the part of Mrs. Walter or her estate.

Accordingly, we reverse the court of appeals' judgment and render judgment that Eisenhauer take nothing.

**OPINION DELIVERED:** October 30, 2015

4