

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00867-CV

Deborah **MORALES** a/k/a Deborah Lund,
Appellant

v.

Terry **WALKER**, Kristy Walker, Carlos Gracian, Vicki Gracian, Jason Flewellin,
and Tiffeny Flewellin,
Appellees

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2022-CI-08232
Honorable Rosie Alvarado, Judge Presiding

Opinion by:    Adrian A. Spears II, Justice

Sitting:      Irene Rios, Justice
              Lori Massey Brissette, Justice
              Adrian A. Spears II, Justice

Delivered and Filed: April 30, 2026

AFFIRMED AS MODIFIED

After a jury trial, Appellant Deborah Morales a/k/a Deborah Lund ("Morales") was found

liable under section 12.002 of the Texas Civil Practice and Remedies Code for filing a fraudulent

Affidavit of Adverse Possession in the deed records in Bexar County, Texas. Because the trial

court's judgment reflects an incorrect post-judgment interest rate, we modify the trial court's

judgment to provide for a post-judgment interest rate of 7.75%. We affirm the judgment as modified.

## BACKGROUND

The dispute between the parties in this appeal arose when on March 25, 2022, Morales filed an Affidavit of Adverse Possession ("the affidavit") in the Official Public Records of Bexar County, Texas, which was recorded as Document Number 20220076010. The affidavit asserted that Morales was the sole owner by adverse possession of a private road located in the Stage Coach Hills Subdivision. The private road runs in front of Morales's property and the property of Appellees Kristy and Terry Walker, and behind the properties of Appellees Vicki and Carlos Gracian, and Appellees Tiffeny and Jason Flewellin. The private road is the only access the Walkers and Morales have to their respective properties. On May 3, 2022, the appellees filed suit seeking a declaratory judgment that Morales did not own the private road. They also brought a suit under Chapter 12 of the Texas Civil Practice and Remedies Code, alleging that the affidavit filed by Morales constituted a fraudulent claim against real property and that they were entitled to statutory damages, attorney's fees, and costs.[1] The jury found that Morales was liable under Chapter 12 and awarded the Walkers $105,462 in attorney's fees through trial.[2] The final judgment awarded (1) $10,000 in statutory damages pursuant to section 12.002 to each appellee; (2) attorney's fees in conformity with the jury's verdict to the Walkers; and (3) court costs of $439.12 to the Walkers.

---

[1] Initially, all appellees were represented by Elms Macchia, PLLC. By the time of trial, Elms Macchia, PLLC represented only Terry Walker and Kristy Walker, having been allowed by the trial court to withdraw from representing the other appellees. Thereafter, the other appellees proceeded pro se. After the Walkers filed their appellees' brief, the Gracians and the Flewellins filed a motion to join in and adopt the appellees' brief filed by the Walkers, which this court granted.

[2] The jury also awarded contingent appellate attorney's fees.

Morales appealed.[3]

## LEGAL SUFFICIENCY

Morales argues that the evidence is legally insufficient to show that she filed the affidavit with knowledge that the document was fraudulent or with intent to cause harm.[4] *See* TEX. CIV. PRAC. & REM. CODE § 12.002 (a) (imposing liability for making, presenting or using a document or other record with "knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property," with "intent the document or other record be given the same legal effect as a court record or document of a court," and with "intent to cause another person to suffer: (A) physical injury; (B) financial injury; or (C) mental anguish or emotional distress"). Morales emphasizes that on January 26, 2023, she revoked the affidavit and waived her claim of adverse possession.[5] She further argues that the appellees stipulated to having no actual damages and to pursuing only statutory damages. According to Morales, mere disagreement over boundary rights or clerical error does not satisfy intent to harm element. We review legal sufficiency under the usual standard of review. *See Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014).

The affidavit affirmed that Morales had "been in possession and maintained possession of the [p]rivate [r]oad at 9039 Cap Mountain Drive"; had "exclusively occupied and used the [p]rivate

---

[3]Morales was represented by counsel at trial but now represents herself on appeal. We note that Morales has brought several issues for the first time in her reply brief, including that she was deprived of a fair opportunity to prepare a defense and that the Walkers' attorney committed "unauthorized hybrid representation" at trial. Generally, an issue raised for the first time in a reply brief is waived and need not be considered by this court. *See MedFin Manager, LLC v. Stone*, 613 S.W.3d 624, 627 (Tex. App.—San Antonio 2020, no pet.); *McAlester Fuel Co. v. Smith Int'l, Inc.*, 257 S.W.3d 732, 737 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Thus, we limit our analysis to the issues brought in appellant's brief and do not consider the additional issues brought for the first time in her reply brief.

[4]Morales also argues the trial court erred in denying her motion for judgment notwithstanding the verdict. Because we review a judgment notwithstanding the verdict ("JNOV") under a no-evidence standard of review, we will analyze her arguments regarding the trial court's error in denying her motion for JNOV in the legal sufficiency sections of this memorandum opinion. *See Bank of Am., N.A. v. Eisenhauer*, 474 S.W.3d 264, 265 (Tex. 2015).

[5]At trial, there was evidence that the appellees proceeded with their declaration action and chapter 12 suit after Morales revoked the affidavit, because they had already incurred substantial attorney's fees and had no assurance that Morales would not file a similar document in the future.

[r]oad since July 30, 2000"; had "continuously possessed, cultivated, used, and enjoyed the Property without interruption by and adverse suit to recover the Property"; had "[s]ince July 30, 2000, . . . actually and visibly appropriated the Property and claimed the Property as [her] own inconsistent with and hostile to the claims of all others"; and had "possession and use of the [p]rivate [r]oad since July 30, 2000." From the evidence at trial, the jury could reasonably conclude that Morales fraudulently made these statements with intent to harm.

At trial, there was evidence that Morales's neighbors had the right to use the private road and did use the private road. Terry and Kristi Walker purchased their property on Cap Mountain Drive in September 2000 and have lived continuously there since their house was constructed in 2001. The private road provides the only access to their property. Kristi Walker testified that her warranty deed gave her the right to use the private road, limiting her right subject to the rights, if any, shown on the plat recorded for the Stage Coach Hills Subdivision in Volume 4960, page 225, Plat Records of Bexar County, Texas. The Walkers' warranty deed and the plat recorded in Volume 4960 at page 225 from the Plat Records of Bexar County, Texas, were admitted in evidence. Kristi Walker testified that her right of access in the warranty deed was the same type of access granted to Morales in her deed.[6] Kristi Walker hired a title company to research the owner of the private road. The title company's report, which was admitted in evidence, stated that the private road "was not dedicated to the public" and that "no conveyance was found of record out of the developer, Southwest Investors, Inc. or H.W. Marshall, Jr.," who was the president of

---

[6]Morales's warranty deed states that "[a]ccess to the subject property is limited to the rights, if any, to use the private road shown on plat recorded in Vol. 4960, page 225, Plat Records of Bexar County, Texas, along the north boundary line of Lot 93, described herein."

Southwest Investors, Inc. The title company concluded that the developer of the subdivision, Southwest Investors, Inc., was the owner of the private road.[7]

The Flewellins have lived on their property since 2015; the Gracians have lived on their property since 2016. Both couples use the private road to access their properties through their respective back gates. Kristi Walker testified that many other neighbors also used the private road, including the Bolts, the Brownings, and Nancy Place. She also testified that another couple used the private road to exercise their horse, another neighbor used the private road to conduct science experiments for her homeschooled children, and another neighbor used the private road to train his dog.

There was also evidence that while Morales owned the property on Cap Mountain Drive since 2000, she had not herself lived on the property until 2022. Kristi Walker testified that Morales's daughter first lived on the property, followed by a renter, and that the property was then vacant for several years. Tiffeny Flewellin confirmed that when she and her husband bought their property in 2015, it was Morales's daughter who lived on the property. According to Kristi Walker, Morales did not live in the house until June 2022. Photographs were introduced in evidence showing that prior to 2022, Morales's house was in an inhabitable condition. Kristi Walker testified that in early 2022, extensive remodeling occurred to Morales's house. Further, during Morales's testimony, she was impeached with evidence showing that prior to 2022, she resided at another address with her husband.

While Morales claimed at trial she had only intended to adversely possess the small portion of the private road directly in front of her house, Kristi Walker, Tiffeny Flewellin, and Carlos Gracian testified to Morales's actions in excluding others from using the entire private road. There

---

[7]The title company's report also noted that Southwest Investors, Inc. dissolved on February 13, 1980 and that its president, H.W. Marshall, Jr. died on May 2, 2008.

was testimony that Morales acted to exclude her neighbors from using the private road by (1) cutting trees down and placing the large cut limbs in front of the back gates of others, (2) placing large rocks in front of other's back gates on the private road, (3) posting written notices stating that Morales had adversely possessed the private road and informing others that they were prohibited from using the private road, (4) continuously parking large vehicles in front of other's back gates on the private road, (6) placing heavy picnic tables in front of other's back gates, and (7) informing the deputy sheriff who responded to a call that she owned the private road and no one else could use the private road. Although Morales denied these actions, the jury, as the sole judge of the credibility of the evidence, was free to disbelieve Morales's testimony and that of her daughter. Thus, we conclude from all the evidence presented at trial, the jury could reasonably infer that Morales fraudulently made the assertions in the affidavit. *See Nationstar Mortg. LLC v. Barefoot*, 654 S.W.3d 440, 453 (Tex. App.—Houston [14th Dist.] 2021, pet. denied); *Taylor Elec. Servs. Inc. v. Armstrong Elec. Supply Co.*, 167 S.W.3d 522, 528 (Tex. App.—Fort Worth 2005, no pet.).

From all the evidence, the jury could also reasonably infer that Morales intended the affidavit to be given legal effect and thus to harm the appellees. The purpose of the affidavit was to legally establish Morales's sole ownership of the private road to the exclusion of appellees. The jury could infer that by fraudulently filing a document and seeking to exclude appellees from using the private road, Morales intended to cause harm. The filing of the affidavit in the public records created a cloud on appellees' title and sought to deprive appellees of their right to use the private road and enjoy their property. Further, as the private road constituted the only access to the Walkers' property, deprivation of their right to use the private road would dramatically affect the value of their property.

Finally, we note that Morales argues the evidence is insufficient because the appellees "stipulated to no actual damages and pursued only statutory damages." Appellees, however, were not required to plead or prove an actual injury to have a cognizable legal claim under chapter 12. *See Abraham v. Acton*, 697 S.W.3d 201, 212 (Tex. App.—El Paso 2023, no pet.) (holding "that all of the [a]ppellees had statutory standing to sue under [c]hapter 12, and none were required to plead or prove an actual injury to have a cognizable legal claim"). Chapter 12 allows an award of statutory damages without evidence of actual damages. *See* TEX. CIV. PRAC. & REM. CODE § 12.002; *Roman v. Ramirez*, 573 S.W.3d 341, 351 (Tex. App.—El Paso 2019, pet. denied) (explaining that "Chapter 12 exemplifies several Texas statutory schemes that allow statutory damages without evidence of actual damages").

We therefore conclude the evidence is legally sufficient to show that Morales violated chapter 12 by filing her affidavit in the public records.

## AWARD TO JASON FLEWELLIN

Morales argues that the trial court erred in awarding statutory damages of $10,000 to Jason Flewellin in the final judgment. According to Morales, "[a] judgment for a party who withdrew, did not appear, and presented no evidence is void under both Texas law and constitutional due process standards." First, Morales is incorrect in saying that Jason Flewellin "withdrew" from the case. The clerk's record reflects that on September 22, 2022, the trial court granted the motion to withdraw as counsel filed by Jason Flewellin's attorney. Thus, after September 22, 2022, Jason Flewellin proceeded as a pro se litigant, and his claims remained pending at the time of trial.

During trial, the court inquired about Jason Flewellin's absence. His wife, Tiffeny Flewellin, informed the court that Jason Flewellin was still living at their house but was unable to attend. The trial court accepted this explanation and proceeded with the trial. Morales did not

object to continuing with the trial in Jason Flewellin's absence, did not move to dismiss Jason Flewellin's claims, and did not object to Jason Flewellin's inclusion in the jury charge. Thus, Morales has waived any complaint to Jason Flewellin's inclusion in the jury charge. *See* TEX. R. CIV. P. 274.

Further to the extent Morales is bringing a legal sufficiency issue with respect to Jason Flewellin's claim, we note that his wife Tiffeny Flewellin was a co-owner of their house and testified that (1) she and her husband bought their house in 2015, (2) they have a barn in the back of their property that her husband uses as a workshop, and (3) they use the private road to access their back gate so that they can unload "wood and stuff." Tiffeny Flewellin testified that Morales used the private road to block their entire property line, preventing them from accessing their back gate. According to Tiffeny Flewellin, Morales used her vehicles to block the Flewellins' back gate and that when Morales needed to use one of the vehicles, she would "put another vehicle in that spot." Tiffeny Flewellin also testified about the written notices Morales posted on the private road, which stated that the Flewellins were "forbidden to use the private road for [their] personal use." Tiffeny Flewellin testified that Morales was not just asserting ownership of the private road in front of Morales's property but was asserting ownership over the entire private road. Tiffeny Flewellin also testified that Morales had not exclusively possessed and used the private road for more than ten years as she claimed. Thus, the evidence is legally sufficient to support a statutory damages award of $10,000 to Jason Flewellin.

**MASTER IN CHANCERY REPORT**

Morales argues that the trial court erred in excluding the Master in Chancery's Report, "which had been pre-admitted into evidence, agreed upon by all parties, and contained factual findings critical to [Morales]'s defense." She argues the exclusion of the report violated Texas Civil Rule of Procedure 171 and was admissible hearsay pursuant to Texas Rule of Evidence 803(a). We review a trial court's decision to admit or exclude evidence for abuse of discretion. *See Nat'l Liability & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527-28 (Tex. 2000); *United Indep. Sch. Dist. v. U.S. Trailer Relocators, LLC*, No. 04-17-00281-CV, 2018 WL 2943821, at *5 (Tex. App.—San Antonio June 13, 2018, no pet.).

The clerk's record reflects that after mediation, on March 10, 2023, the parties entered into a partial mediated settlement agreement, which settled certain issues relating to maintenance of the private road. The partial mediated settlement agreement specifically carved out the appellees' claims for declaratory judgment and chapter 12, stating that "Plaintiffs' statutory claims and declaratory judgment action against defendant will [] be tried to the court." On June 6, 2023, a master in chancery was appointed by agreement of the parties to make "findings and decisions" related "to the issues surrounding the use and maintenance of the [p]rivate [r]oad at issue in this case." The order limited the Master's authority to the maintenance of the private road, specifically stating that the master "shall not make any award/order" regarding the claims carved out of the partial mediated settlement agreement. After the master in chancery made its report, on January 4, 2024, the trial court signed a permanent injunction relating to maintenance of the private road and enjoined the parties from blocking access to the private road.

At trial, Morales attempted to admit the master in chancery's report in evidence. The Walkers' attorney objected, stating that the master in chancery's report related to "how the parties

would interact with respect to the road," i.e., "[w]hat they could trim, what the dimensions were, who was responsible for maintaining." The Walkers' attorney argued that the master in chancery's report was irrelevant to the pending claims, explaining that the report had "nothing to do with whether or not [Morales] put false statements in a public document that she filed." The trial court then considered the master in chancery's report line by line and ruled that some parts of the report should be redacted. The trial court asked Morales's attorney to prepare a redacted version of the master in chancery's report and, during a break, present the redacted version to the other parties to view. Morales's attorney never introduced the redacted master in chancery report in evidence. Nor did Morales's attorney make an offer of proof of the unredacted master in chancery report or otherwise show how Morales was harmed by the failure to admit the unredacted master in chancery report. *See In re N.R.C.*, 94 S.W.3d 799, 806 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (explaining that in order to preserve error for appeal, the offer of proof must show the nature of the excluded evidence with sufficient specificity to allow the reviewing court to determine its admissibility).

We note that Morales also argues that the trial court erred because the master in chancery's report was "pre-admitted into evidence." The clerk's record reflects that "[i]n an effort to streamline trial presentation and avoid unnecessary inconvenience and stress to potential witnesses," the parties had entered into a Rule 11 agreement. According to the agreement, the "documents previously provided in this case (labeled Walker000001-191) are deemed admissible, and neither party shall object to the admission of such documents on the basis of authenticity, hearsay, lack of sponsoring witness, or other procedural objection." Morales's exhibits, however, were not included in the scope of this Rule 11 Agreement. Therefore, Morales's assertion that the

master in chancery report had been "pre-admitted into evidence" is not supported by the record. We find no abuse of discretion by the trial court.

## JURY CHARGE

Morales complains that the trial court "submitted a defective jury charge that omitted essential elements required to establish liability under" chapter 12. According to Morales, the jury charge "misled the jury on the applicable legal standards[] and grouped [the appellees] together in a way that violated [her] due process rights." The record reflects, however, that Morales's attorney agreed to the form of the jury charge and did not object in any way to the charge read to the jury. To preserve error, a party must object to defective submissions in the court's charge or submit written requests for additional questions, instructions, or definitions that are omitted from the charge. *See* TEX. R. CIV. P. 273, 274; *Railroad Comm'n v. Gulf Energy Expl. Corp.*, 482 S.W.3d 559, 571 (Tex. 2016). Here, there is nothing in the record to indicate that the trial court was made aware of the complaints Morales now urges on appeal. *See Burbage v. Burbage*, 447 S.W.3d 249, 256 (Tex. 2014) (to preserve jury charge error for appeal, a party must make timely and specific objections to the charge); *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992) (explaining that to preserve error for appeal, the party must have made the trial court "aware of the complaint, timely and plainly" and obtained a ruling). Therefore, Morales has not preserved her jury charge complaint for appellate review.

## ATTORNEY'S FEES

Morales argues that the trial court erred in awarding attorney's fees to the Walkers. She makes several complaints about the attorney's fees award. She complains that billing records found in Plaintiffs' Exhibit 25 included "improper entries," which she argues are unrecoverable under Texas law. She emphasizes that the billing records "include[ed] charges for court-ordered

mediation, withdrawn parties, overhead, and unrelated financial penalties—without segregation or evidentiary support." She complains that the evidence of attorney's fees was not properly segregated by claim. She complains that the jury charge "did not instruct the jury to segregate attorney's fees by Plaintiff or claim." Finally, she argues the attorney's fees are not supported by legally sufficient evidence.

To the extent that Morales is arguing that the billing records found in Plaintiffs' Exhibit 35 were inadmissible, she failed to preserve that issue for appeal because she did not object to its admission at trial. *See* TEX. R. APP. P. 33.1. Similarly, to the extent she is arguing that the evidence of attorney's fees was inadmissible because it was not properly segregated by claim, Morales also failed to preserve that issue for appeal. Her attorney made no objection during the entire direct examination of the Walkers' attorney, who testified about the reasonable and necessary attorneys' fees incurred in prosecuting this case. Indeed, when asked if he wanted to cross-examine the Walkers' attorney, Morales's attorney asked only one question: "And, I'm sorry, I may have missed it. What was your total attorney fees?" The Walkers' attorney replied, "$105,461.35." Morales's attorney then stated, "Okay. Nothing further." The trial court asked, "That was it?" Morales's attorney replied, "I respect the man and his time." Thus, by failing to object at trial to the evidence about which she now complains, Morales has waived any error by the trial court in admitting the evidence. *See RSL Funding, LLC v. Metro. Life Ins. Co.*, 728 S.W.3d 194, 221 (Tex. App.—Houston [1st Dist.] 2025, no pet.) (explaining that an "appellate complaint concerning failure to segregate attorney's fees is waived 'if no one objects to the fact that the attorney's fees are not segregated as to specific claims'") (quoting *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997)); *Hazel v. Lonesome Ranch Prop. Owners Ass'n*, 656 S.W.3d 468, 499 (Tex. App.—El Paso 2022, no pet.) ("Where no objection is made to the failure to segregate attorneys' fees,

either at the time evidence of attorneys' fees is presented or to the charge, the error is waived.") (quoting *Lesikar v. Rappeport*, 33 S.W.3d 282, 317 (Tex. App.—Texarkana 2000, pet. denied)).

With regard to Morales's argument that the evidence is legally insufficient to support the award of attorney's fees, Morales has also failed to preserve that issue for appeal. To preserve a legal sufficiency challenge for appeal after a jury trial, an appellant must argue the evidence is legally insufficient in either (1) a motion for directed verdict, (2) an objection to the submission of a jury question, (3) a motion for JNOV (or a motion to disregard), or (4) a motion for new trial. *See In re D.T.*, 625 S.W.3d 62, 75 n.8 (Tex. 2021); *Cecil v. Smith*, 804 S.W.2d 509, 510-11 (Tex. 1991); *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex. 1985). First, while Morales's attorney moved for a directed verdict at trial, he did not argue as one of his grounds that the Walkers' attorney's fees were not supported by legally sufficient evidence. Second, as noted above, Morales's attorney did not object to the submission of a jury question on the Walkers' attorney's fees. Third, while Morales did file a motion for JNOV, she did not argue in her motion for JNOV that the Walkers' attorney's fees were not supported by legally sufficient evidence. Fourth, Morales did not file a motion for new trial. Thus, Morales has failed to preserve her complaint that the Walkers' award of attorney's fees is not supported by legally sufficient evidence.

Finally, Morales complains that the jury charge "did not instruct the jury to segregate attorney's fees by Plaintiff or claim." Morales argues that "[a]s a result, the jury awarded a lump-sum fee unsupported by any allocation or evidentiary framework." As explained above, Morales made no objection to the jury charge and thus has failed to preserve her complaint about the jury charge for appellate review. *See Gulf Energy Expl. Corp.*, 482 S.W.3d at 571; *Burbage*, 447 S.W.3d at 256.

**INTEREST RATE**

Finally, Morales argues that the trial court erred in setting the interest rate in the judgment above the statutory limit. Morales emphasizes that the December 9, 2024 judgment provides for an incorrect post-judgment interest rate of 8.5% per annum. In their appellees' brief, the Walkers concede that the post-judgment interest rate in the trial court's judgment is incorrect. They explain that the jury returned its verdict on September 24, 2024, and that the Walkers' attorney circulated a proposed form of final judgment to all counsel and parties on September 27, 2024. The Walkers state that at that time, the judgment rate stated in the proposed form of judgment was correct. However, the judgment was not signed and entered for another forty-two days. By the time the judgment was signed, the interest rate had changed to 7.75%. *See* TEX. FIN. CODE § 304.003(c) (explaining how the post-judgment interest rate is calculated); *id*. § 304.004 (explaining how the consumer credit commissioner shall cause the post-judgment interest rate to be published); *id*. § 304.005 (explaining the accrual of judgment interest).

The Historical Table of Post-Judgment Interest Rates published by the Texas Office of Consumer Credit Commissioner indicates that in December 2024, the post-judgment interest rate was 7.75%. *See* TEX. OFFICE OF CONSUMER CREDIT COMM'R, *Historical Table of Post-Judgment Interest Rates*.[8] Therefore, we modify the trial court's judgment to provide for a post-judgment interest rate of 7.75%. As modified, the trial court's judgment is affirmed.

Adrian A. Spears II, Justice

---

[8]The Historical Table of Post-Judgment Interest Rates can be viewed at the website for the Texas Office of Consumer Credit Commissioner.